# Taney's Appeal.

A minor who was domiciled and resident with his parents in Pennsylvania was taken by them to the west, they having formed a design to settle in the state of Kansas. While *en route* a railroad accident occurred, in the state of Michigan, by which the minor was injured and his parents killed. The minor's aunt, resident and domiciled at Philadelphia, went to him to nurse him, and within a month of her arrival filed a petition in the Probate Court of Michigan, setting forth her intention to remain with the minor permanently in that state, whereupon she was duly appointed guardian of his person and estate. Subsequently she filed a petition in the Orphans' Court of Pennsylvania, setting forth the above facts, showing that she had entered security in Michigan in double the amount of the minor's estate, and praying that under the provisions of the Act of April 21st 1856, Pamph. L. 495 (there being an act of similar purport in the state of Michigan), the guardians of the minor already appointed in Pennsylvania should be discharged. *Held*, that both the minor and his guardian petitioning were "non-residents" within the meaning of the said act, and that a decree should be made in accordance with the prayers of the petition.

January 12th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from a decree of the Orphans' Court of *Philadelphia county:* Of July Term 1880, No. 118.

This was an appeal from a decree of the said court discharging Ellen Taney as guardian of the person of William Rice, a minor, between three and four years of age, and discharging the Fidelity Insurance, Trust and Safe Deposit Company as guardian of his estate. The decree was entered upon the petition of one Mary Rogers, guardian of the said minor, appointed by the Probate Court at Jackson, Michigan, to which Ellen Taney filed an answer.

The facts were as follows: William J. Rice and wife, the parents of said minor, were, prior to October 1879, residents of and domiciled in Philadelphia. Early in that month they left Philadelphia to emigrate to Kansas, with the intention of remaining there. Upon October 10th, while travelling on the Michigan Central Railroad, an accident happened near Jackson City, by which both the minor's parents were instantly killed, and the minor himself seriously injured. In December 1879, whilst the child was still detained in Jackson by his injuries, Mary C. Rogers, his maternal aunt, a resident of Philadelphia, went to Jackson to take care of him. On December 23d she filed a petition in the Probate Court of Jackson county, Michigan, setting forth her intention to remain permanently in Michigan with the child, whereupon the said court appointed her guardian of the person and estate of the said minor.

In January 1880, Ellen Taney, of the city of Philadelphia, also an aunt of the said minor, was, upon the petition of Michael Rice,

[Taney's Appeal.]

his uncle, appointed by the Orphans' Court of Philadelphia county, guardian of the person, and the Fidelity Insurance, Trust and Safe Deposit Company was appointed guardian of the estate of the said minor.

In May 1880, Mary C. Rogers, the foreign guardian, presented, by her counsel, a petition to the Orphans' Court of Philadelphia county, setting forth her appointment as guardian in Michigan, and that she had entered security there (a duly authenticated exemplification of the proceedings being annexed to the petition); that she had given thirty days' notice of her application to the Philadelphia guardians; that an act similar to that under which this application is made, exists in the state of Michigan; and praying the court to make a decree discharging the said Ellen Taney and the Fidelity Company as guardians.

This petition was presented under the provisions of the Act of April 21st 1856 (Pamph. L. 495; Purd. Dig. 412), which is as follows:

' " In all cases where any guardian and his ward may both be non-residents of this state, and such ward may be entitled to property of any description in this state, such guardian, on producing satisfactory proof to the Orphans' Court of the proper county, by certificates according to the Acts of Congress in such cases, that he has given bond and security in the state in which he and his ward reside, in double the amount of the value of the property, as guardian, and it is found a removal of the property will not conflict with the terms or limitations attending the right by which the ward owns the same, then any such guardian may demand or sue for and remove any such property to the place of residence of himself and ward."

The answer of Ellen Taney submitted that the said Mary C. Rogers, guardian, and William Rice, the minor, are not " non-residents of this state," within the purview of the above act, the former having lived in ,Philadelphia as a domestic servant until her recent trip to Jackson, and the latter having lived from birth with his parents in Philadelphia; that the minor's estate consists almost wholly of his claim against the railroad company for damages, for which the company had offered a large sum in settlement; and that the probate court of Jackson had no jurisdiction over the child, he having only been cast in said place temporarily by the chances of a railroad accident.

The replication of Mary C. Rogers averred that it was her intention to acquire a domicile in Jackson, Michigan, before her appointment there as guardian, and that she now resides there permanently; that at the time of the accident, the father and mother of the minor had abandoned their residence and domicile here, with the intention of acquiring a new domicile and residence in Kansas, whereby both she and the minor have become legally,

as well as actually, residents of the state of Michigan, and non-residents of Pennsylvania within the meaning of the Act of 1856.

After argument the court entered the following decree : " It is ordered and decreed that The Fidelity Trust and Safe Deposit Company be discharged as guardian of the estate of William J. Rice, a minor, and further, that Ellen Taney be discharged as guardian of the person of the said William J. Rice."

Ellen Taney thereupon took this appeal, assigning as error the said decree.

*Joseph C. Ferguson*, for the appellant.—The Act of April 21st 1856, by its terms, applies only to cases in which both guardian and ward are non-residents of this state.   In this case, neither the guardian nor ward were non-residents within the meaning of the act.   They were both domiciled and lived in Philadelphia until, by the chances of a railroad accident, the boy was left in Michigan before his parents had acquired a new domicile, and the said Mary C. Rogers followed him, to look after him, wherever he might be. A minor's residence or domicile is that of his father, or, if he has no father, that of his birth, and he cannot acquire another until he becomes *sui juris*.   There was no intention by the father to change his domicile from this state *to the state of Michigan*.   A man cannot be without a domicile.   A domicile once acquired . remains until a new one is acquired actually *facto et animo ;* the fact and intention must concur.   There is one recognised exception to this rule, which is, that the domicile of birth easily reverts, and therefore, if a man has acquired a new domicile, different from that of his birth, and he removes from it with an intention to resume his native domicile, the latter is re-acquired, even while he is on his way, *in itinere ;* for the native domicile reverts the moment the acquired domicile is given up with the intention of resuming the former.   In this, as in other cases, *exceptio probat regulam :* Reed's Appeal, 21 P. F. Smith 378, 383, per Shars-wood, J.; Story on Conflict of Laws, sect. 47.

The father, in this case, did not change his *residence* any more than he did his domicile, because he was prevented from completing such change.   In the intendment of the Act of 1856, therefore, the terms domicile and residence are synonymous.   The minor, whose residence was that of his father at the time of the latter's death, was incapable of changing his residence: Cooper *v.* Galbraith, 3 W. C. C. R. 546 ; United States *v.* Penelope, 2 Peters Adm'r. 450; State *v.* Daniels, 44 N. H. 383; Jennison *v.* Hapgood, 10 Pick. 77 ; Allentown Contested Election Case, 8 Phila. R. 575 ; 2 Kent Com. 431; Frost *v.* Brisbin, 19 Wend. 11; Pfoutz *v.* Comfort, 12 Casey 422 ; White *v.* Brown, 1 Wallace, Jr., 264; Guier *v.* O'Daniel, 1 Binn. 349, note ; School Directors *v.* James, 2 W. & S. 570.

[Taney's Appeal.]

*E. A. Anderson* (with whom was *John H. Fow*), for the appellee.—There can be no question as to the non-residence of Mary C. Rodgers, who is *sui juris*, and has acquired both a domicile and residence in Michigan.   We contend, that the minor is also a "non-resident" within the meaning of the Act of 1856.   The appointment of Mary C. Rogers was prior to the appointment of Mrs. Taney.   The former having the control of the orphan minor, had the right and exercised it, of changing his *residence* to Michigan, even if at the time of the accident his legal residence was here : School Directors *v.* James, 2 W. & S. 572.   The authorities are conflicting whether a guardian may change a ward's *domicile*, but the weight of authority is that he may, except, possibly, for purposes of succession : Potinger *v.* Wightman, 3 Meriv. 67 ; Lyons *v.* Andrews, 12 Louisiana Ann. 685 ; Wells on Jurisdiction of the Courts 288 ; Holyoke *v.* Haskins, 5 Pick. 26 ; Cutts *v.* Haskins, 9 Mass. 543.

But we contend that the father was a "non-resident" of Pennsylvania at the time of his death, and therefore the child was also, and so remains.   The vice of the appellant's argument is in confusing the terms *domicile* and *residence*, and treating them as synonymous.   A man may be a resident of one place while he is domiciled in another ; and a man whose domicile is Pennsylvania may be a non-resident of that state, even though he has not acquired a residence elsewhere.   A man may become a wanderer, when there will be an end of his residence in his former dwelling place as effectually as if he were to gain a residence in another place : Exeter *v.* Brighton, 15 Maine 60 ; Inhabitants of Jefferson *v.* Inhabitants of Washington, 19 Id. 302 ; North Yarmouth *v.* West Gardiner, 58 Id. 211 ; Pfoutz *v.* Comford, 12 Casey 422 ; Hicks *v.* Skinner, 72 N. C. Rep. 1 ; Kilburn *v.* Bennett, 3 Metc. 199.   The distinction between domicile and residence is a clear one, and if adhered to will harmonize many apparently conflicting authorities.   Residence, as distinguished from domicile, has been defined to be "a personal presence, without any present intention to depart:" Warren *v.* Thomaston, 43 Maine 418 ; North Yarmouth *v.* West Gardiner, 58 Id. 210–11 ; Bruce *v.* Bruce, 6 Brown's Par. Cas. 566 ; Bell *v.* Kennedy, Law Rep., 1 Scotch and Divorce App. 307, 320, 321 ; Fuller *v.* Bryan, 8 Harris 144 ; Long *v.* Ryan, 30 Grattan (Va.) 718 ; Dicey on Domicile 76.

The judgment of the Supreme Court was entered January 24th 1881,

PER CURIAM.—We are of opinion with the learned court below, that both the guardian and ward were residents of the state of Michican, and within the meaning and purview of the Act of April 21st 1856, Pamph. L. 495.   If the question regarded the law of succession to the ward's property the rule might be different.   A

clear distinction exists, as was shown in the able argument of the young gentleman who argued this case for the appellee, between domicile and residence. Every reason of policy and convenience requires the application of the provision of the statute to a case of permanent residence in another state, though in strictness the domicile may remain unchanged.

> Decree affirmed, and appeal dismissed at the costs of the appellant.