## GUARDIAN FOR J. W. WILKINS ET AL.

APPEAL BY A. H. HADFIELD FROM THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued November 3, 1891—Decided January 4, 1892.

1. It is probable that the domicile of a minor, who is under the care of a guardian of the person appointed by the proper domiciliary court, cannot be changed, even by such guardian, without the consent of that court.

2. But the guardian may, without such consent, change the minor's residence. The domicile may be in one state, and the residence for the purposes of guardianship of the person, in another state: Taney's App., 97 Pa. 74.

(a) A guardian of the person, appointed by the proper court at the place of the minor's residence and domicile in another state, brought his ward into this state, to reside, without obtaining the consent of the domiciliary court:

3. The minor's residence having thus been changed, the Orphans' Court of the county into which he was brought had jurisdiction to appoint a guardian of the person; and, the same having been judiciously exercised, its decree was affirmed.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 243 October Term 1891, Sup. Ct.; court below, No. 318 June Term 1887, O. C.

### Statement of Facts.

On February 13, 1891, Mary Ann Wilkins, E. J. Wilkins and Miriam Hays presented their petition to the court below for the appointment of a guardian of the persons of Joseph W., Mary J., Henry W., and Francis J. Wilkins, minor children of Joseph W. Wilkins, late of Waukesha county, Wisconsin, deceased, under the age of fourteen years.

The petition averred that said minors had no guardian of their persons within this commonwealth; that they had real estate to the annual value of three hundred dollars, and some little personalty, in Waukesha county, Wisconsin, of which one Abram H. Hadfield was guardian, and personal estate in the county of Allegheny, Pennsylvania, to the amount of about one hundred thousand dollars, of which the Fidelity Title & Trust Company was guardian; that Henry W. Kendall, a maternal uncle, was the guardian of their persons in said Waukesha county; and that said Kendall had removed to said county of Allegheny, bringing said minors with him, in order to afford them proper advantages of education, comfort, etc., and bring them nearer to their relatives. The petitioners, representing that they were relatives and next of kin of said minors, prayed the court to appoint said Henry W. Kendall, or some other suitable person, guardian of the persons of said minors.

An answer to this petition was filed by Jehu J. Kendall, of Rock county, Wisconsin, maternal grandfather of the minors, averring that their father died on November 5, 1886, and their mother on March 21, 1889, both resident in Waukesha county, Wisconsin; that Henry W. Kendall did not take said minors to Pennsylvania for purposes of education or for their own advantage, but, knowing that he was likely to be removed from his guardianship of their persons by the court of Waukesha county, he secretly and fraudulently removed them from the state of Wisconsin, on February 9, 1891, in fraud of the rights of all parties in interest residing in that state, and by arrangement with and in the interest of the petitioners, such removal being without any authority from the court which appointed him; that he had proved himself wholly unworthy of his trust, and proceedings had been commenced in the court of Waukesha county for his removal, an exemplification of the record thereof being annexed to the answer. The answer suggested that the Orphans' Court of Allegheny county ought not to assume jurisdiction, and that the petition should be dismissed.

Opinion of Court below.

The exemplified record filed with the answer showed that on February 10, 1891, Jehu J. Kendall, as grandfather of the minors aforesaid, presented their petition to the County Court of Waukesha county to revoke the appointment of Henry W. Kendall as guardian of the persons of said minors, and remove him from such guardianship as an unfit and unsuitable person; that, after due notice of a citation issued upon said petition, Henry W. Kendall appeared by counsel and filed an answer; that a hearing was had, at which the petitioner and the respondent were represented by counsel, and the minors by a guardian ad litem; and that thereupon, the court, finding that said Henry W. Kendall had misbehaved in various ways, and was an unfit and improper person to be the guardian of said children, vacated his appointment, removed him from his trust and office, and appointed Abram H. Hadfield guardian of their persons, in his place.

Said A. H. Hadfield joined in the answer filed by Jehu J. Kendall, in the present case, praying that the petition of Mary Ann Wilkins and others be dismissed, and that the custody of the children be given to said Hadfield.

After hearing and argument, the court, OVER, J., on March 13, 1891, filed an opinion and decree as follows:

The guardian of the persons of these minors, appointed by the domiciliary court (the probate court of Waukesha Co., Wis.,) is a stranger to them, and if they be committed to his custody, the care and attention they will receive will in all probability be only such as can be procured for a pecuniary compensation. The fact that a stranger was so appointed, is very persuasive evidence that none of the relatives, residing in that county, were considered proper persons to have their custody.

Their paternal grandmother, an uncle and an aunt, and other blood relations reside in this county, some of whom are in every way competent to have their custody; and if the minors remain here, they will receive that care and attention which affection alone can supply, and which is so necessary for children of their tender years. The bulk of their estate is in this county, amounting to over ninety thousand dollars inherited from their paternal grandfather, which is invested in interest-bearing securities. This court has and expects to retain jurisdiction of

it, and the greater portion of the allowance for their support must be made out of it. There can be no doubt that the best interests of the minors would be promoted, by allowing them to remain with their relations in this county; and the only doubtful question is as to whether this court has jurisdiction to appoint one of them guardian of their persons.

They were brought to this county on the eleventh day of February, 1891, by Henry W. Kendall, their maternal uncle, who was then guardian of their persons by appointment of the domiciliary court. Their mother, who died subsequently to their father, committed them to his care. In Schouler's Dom. Rel., § 334, it is said: "With the facilities of modern travel and the liberal intercourse of nations, the tendency increases in favor of the guardian's power to change in good faith his ward's residence, if not the domicile, even though not endued with parental authority. This principle is the more readily admitted, so far as different counties in the same state are concerned; and it would be unwise for American courts to apply as between states, united under one general government, the same rigidly-exclusive doctrines which foreign countries, differing in religion, customs and civil institutions, may see fit to adopt in their intercourse with one another. For, such a change might be for the direct benefit of the ward's health, education or personal surroundings."

Kendall's intention undoubtedly was to change the residence of the minors to this county; and as to them he made the change in good faith. And it is clear that it was and is for the direct benefit of their personal surroundings. Whether or not he acted in good faith to the domiciliary court, is a question which it is not necessary to decide, as to the removal of the minors by him. Dawson v. Jay, 3 DeG. M. & G. 596, is directly in point. There the ward was domiciled in the state of New York, where all her estate was situated; and the domiciliary guardian, a paternal aunt, although an injunction had been issued to restrain her from removing the ward, took her to England. She was discharged from the guardianship, a maternal aunt appointed, and in a contest between the domiciliary guardian and the former guardian for the custody of the ward, the lord chancellor said: "I am not called upon to determine anything as to the conduct of the parties, in causing this young

lady to be brought from America to England in the manner they did. I have only to direct what is now to be done ; " and he refused to give the custody of the ward to the domiciliary guardian. The act of assembly gives this court the care of the persons of minors residing in this county, and the power to appoint, as there shall be occasion, guardians for their persons.

There is a clear distinction between domicile and residence; as the domicile may be in one state, and the residence, for the purpose of guardianship of the person, in another: Taney's App., 97 Pa. 74. And, whilst the domicile of these minors is not and cannot be changed without permission of the domiciliary court, they seem to be residents of this county within the meaning of the act of assembly.

In contests for the custody of minors in this state, the question always turns upon what is for their best interests. The contest here is between Abram Hadfield, a stranger to them, who was appointed guardian of their persons by the domiciliary court, after it had removed their paternal uncle and blood relations residing in that county. As there can be no doubt that it is for their best interests to remain with their relations here, their custody is awarded to Mrs. Miriam Hays, their paternal aunt, and she is appointed guardian of their persons.

And now, to wit, March 13, 1891, this matter came on to be heard, and after due consideration the court appoints Mrs. Miriam Hays, guardian of the persons of the minors.[1]

—Thereupon, A. H. Hadfield, guardian, took this appeal, specifying that the court erred:

1. In entering the final decree.[1]

2. In entertaining jurisdiction.

*Mr. A. M. Imbrie* (with him *Mr. T. E. Ryan* and *Mr. Ogden H. Fethers*), for the appellant.

Counsel cited: 2 Story on Const., § 1313; Dorr v. Dain, 76 Me. 301; Shorter v. Williams, 74 Ga. 539; Shoenberger's Est., 139 Pa. 132; Ex parte Dawson, 3 Bradf. 130; Dawson v. Jay, 3 DeG. M. & G. 764; Nugent v. Vetzera, L. R. 2 Eq. 704; Wellesley v. Duke of Beauford, 2 Russ. & M. 639; People v. Keaney, 21 How. Pr. 74; Woodworth v. Spring, 4 Allen 324.

*Mr. James G. Hays* (with him *Mr. C. C. Dickey*), for the appellees.

Counsel cited:

(1) Pennoyer v. Neff, 95 U. S. 722; Love v. Love, 10 Phila. 455; Commonwealth v. Maize, 23 W. N. 572; Allis v. Morton, 4 Gray 63; Harding v. Weld, 128 Mass. 591; Tiedeman on Police Powers, § 50; McElmoyle v. Cohen, 13 Pet. 325; Burnley v. Stevenson, 24 Ohio St. 478 (15 Am. Rep. 621); Noble v. Oil Co., 79 Pa. 367; Torrance v. Torrance, 53 Pa. 505; 1 Kent Com., §§ 260, 261; Schouler's Dom. Rel., §§ 303, 328.

(2) Ralston's Est., 3 W. N. 392; Taney's App., 97 Pa. 75; Schouler's Dom. Rel., §§ 303, 334; Ross v. Railroad Co., 53 Ga. 514; McClure v. Commonwealth, 80 Pa. 169; Mills v. Charleton, 29 Wis. 400 (9 Am. Rep. 578); In re Hubbard, 82 N. Y. 90; Johnston v. Beattie, 10 Cl. & F. 43; Commonwealth v. Drynan, 15 W. N. 223; Dawson v. Jay, 3 DeG. M. & G. 771; Townsend v. Kendall, 4 Minn. 412 (77 Am. Dec. 534); Wood v. Wood, 5 Paige Ch. 596 (28 Am. Dec. 451); Seiter v. Straub, 1 Dem. 264; Fernsler v. Moyer, 3 W. & S. 418; School Directors v. James, 2 W. & S. 568.

(3) 2 Kent Com., 227, n. 6; Potinger v. Wrightman, 3 Meriv. 67; Wheeler v. Hollis, 19 Tex. 522 (70 Am. Dec. 363); Pedan v. Robb, 8 Ohio 227; Wheeler v. Hollis, 33 Tex. 512; Jacobs on Domicile, §§ 250, 251, 258, 260; Dicey on Domicile, 100; Seiter v. Straub, 1 Dem. 264; Colburn v. Holland, 14 Rich. Eq. 289; Lamar v. Micou, 112 U. S. 471; s. c. 114 U. S. 221; Story Confl. of Laws, §§ 505, 506; Whart. Confl. of Laws, §§ 42, 52; Schouler Dom. Rel., § 334; Broom v. Lynch, 2 Bradf. 218.

PER CURIAM:

The appellant was appointed guardian of the estates of the minor children of Joseph W. Wilkins, deceased, by the court of Waukesha county, in the state of Wisconsin, where their father resided at the time of his death. Henry W. Kendall was, by the same court, appointed guardian of their persons. The bulk of the estate of the minors is in the county of Allegheny, in this state, and their nearest relatives reside there. Their estate in Allegheny county was derived from their paternal grandfather, Joseph Wilkins, who died in 1888, leaving a large estate, a portion of which passed to the Fidelity Title & Trust Company, as guardian of the estate of the minors in that county.

Opinion of the Court.

On the ninth of February, 1891, Kendall, the guardian of the persons of the minors, brought them from Wisconsin to Allegheny county; and shortly after their arrival, the Orphans' Court appointed Mrs. Miriam Hays, their paternal aunt, guardian of their persons. From that order an appeal was taken by the Wisconsin guardian, alleging a want of jurisdiction in the Orphans' Court of Allegheny.

We do not regard this objection as well taken. The minors were brought within the jurisdiction of the court below by their guardian. Their paternal grandmother, an uncle and an aunt, and other blood relations reside in Allegheny county, and, as before observed, the bulk of their estate is there. Their guardian in Wisconsin is a stranger to their blood, and we could not expect from him that care and attention to their training and education that they would be likely to receive from their blood relations, all of whom the court below finds to be in every way competent to have their custody. The court also distinctly finds that it is to the best interests of the minors that they shall reside with their relations in Allegheny county.

We see no difficulty in disposing of the question of jurisdiction, unless we hold that the residence of minor children cannot be changed, even with the consent of their guardian. We are not prepared to assent to such a proposition as this. Granted that their domicile cannot be changed without the consent of the court of the domicile, it by no means follows that their residence cannot be changed by the guardian of their persons. The domicile may be in one state, and the residence for the purpose of guardianship of the person, in another state: Taney's App., 97 Pa. 74. The residence of a minor is frequently changed for educational and other purposes; and, as the action of the court below was clearly in the best interests of these children, we will not disturb the decree. Further comment is unnecessary, in view of the well-considered opinion of the learned judge of the Orphans' Court.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.