JAMES MELBY HOLMES, by his next friend, ALMON B. HOLMES, Appellee, v. JOHN DERRIG and MARGARET DERRIG, Appellants.

Adoption: NATURAL GUARDIANSHIP: FITNESS: STATUTES. Upon the death of both parents, the grandfather or grandmother, if living, become the natural guardians of an orphaned infant; and a deed of adoption by a collateral relative, bearing the consent of a clerk of court and executed without the knowledge or consent of the grandparents who were in rightful possession of the child, will not avail against them, in the absence of a showing of their inability or unfitness to care for the infant.

*Appeal from Webster District Court.*—HON. J. H. RICHARD, Judge.

TUESDAY, JUNE 13, 1905.

HABEAS corpus proceedings to determine right to the custody of the plaintiff, James Melby Holmes, an infant. Judgment awarding such custody to Almon B. Holmes, and defendants appeal.— *Reversed.*

*Healy Bros. & Kelleher,* for appellants.

*Mitchell & Hackler,* for appellee.

WEAVER, J.— The plaintiff is the only child of the marriage of Chauncy F. Holmes and Anna Derrig, and at the commencement of these proceedings was about 3½ years of age. Almon B. Holmes, who appears as next friend of the plaintiff, is a brother of Chauncy F. Holmes, and the defendants are the father and mother of Anna. On January 7, 1901, Chauncy F. Holmes died, leaving his wife and child without means of support. Soon after the death of her husband, Anna Holmes left the child in the custody of her parents, and engaged in service as a domestic. In September, 1901, she was remarried to one John Hanson, and of this marriage another child was born. On January 10, 1903, Mrs. Hanson died, leaving both plaintiff and the child of her marriage with Hanson in the care of the appellants. Since the death of his wife Hanson has never assumed or had the custody of either child, and has contributed nothing to their support. Neither of the parties to this controversy is possessed of any considerable means, and, so far as shown, all are respectable in character and reputation. The testimony tends to show that upon her deathbed the mother of the children verbally confided them to the care of her parents giving particular emphasis to such request concerning the plaintiff, whom her death left wholly orphaned. The ap-

pellants appear to have accepted the trust thus committed
to them, giving the children suitable care and attention, and
are anxious to continue so to do.   A few months after the
death of Mrs. Hanson there occurred some negotiation be-
tween her surviving husband, John Hanson, and Almon B.
Holmes, who was then and still is a resident of Franklin
county, resulting in an attempt on the part of the latter to
adopt plaintiff.   To effect this purpose, Hanson, with Al-
mon B. Holmes and wife, appeared before the clerk of the
district court of Webster county, and that officer, upon the
petition of Hanson, united with Holmes in the execution of
an article or deed of adoption.   The instrument recites that
James Melby Holmes was without living parents, and was
then temporarily in the custody of his grandparents, who
were unable to give him proper care; and that the clerk
assumed to act in the premises, and consent to the proposed
adoption, by virtue of the authority vested in him by the
provisions of Code, section 3251.   The grandparents had no
notice or knowledge of this proceeding until after the alleged
adoption had been consummated, and upon their refusal to
recognize the validity of the deed and surrender the child this
proceeding was begun.   The deed of adoption was recorded
in the office of the county recorder of Webster county, but
was never recorded in Franklin county, the home of Almon
B. Holmes, until after the trial in the court below, and before
final judgment was entered.   The trial court awarded the
custody of plaintiff to Almon B. Holmes, and the defendants
appeal.

In an opinion or statement filed in the case the trial
court appears to concede the invalidity of the deed of adop-
tion prior to its record in Franklin county.   It also concedes
to the grandparents the natural guardianship of the plain-
tiff, but, in view of the fact that they are advanced in years,
have but little means, and are burdened with the care of
another infant child of their deceased daughter, and that, on
the other hand, the uncle is a comparatively young man,

with better prospects of accumulating property, thus giving the plaintiff the advantages of a somewhat better home, the court concludes that plaintiff's interests will be best served by upholding the uncle's claim to his custody. From this conclusion of the learned trial court we feel compelled to dissent. It is true that the dominant consideration in cases of this kind is the interest of the infant, but the parent or other natural guardian of the child has rights in the premises which cannot be ignored. Were it otherwise, and the award of the custody of the infant were made to depend upon the comparative wealth and financial prospects of the claimants, then no parent in the lowlier walks would be safe in the possession and guardianship of his own children against the roving fancy of a rich claimant who may find it less burdensome to adopt than to produce. *Dunkin v. Seifert,* 123 Iowa, 64. It may be admitted that the natural guardian may become so untrustworthy or unfit for the responsibility that in the interest of humanity and society the law will interpose and deprive him of the control of his own child (Code, sections 3246–3249), but in the absence of extreme neglect of natural and legal duty courts will always be slow in refusing recognition to the paramount right of the parent, or of one who is by nature in *loco parentis.*. Had the trial court felt justified in finding that the appellants, or either of them, were of such habits or character as to unfit them for the guardianship and custody of a young child, we should not be inclined to interfere with its order. There is, however, no such finding, but, on the contrary, the judgment appealed from appears to be founded exclusively upon the effect of the deed of adoption (after it was recorded in the proper county) and upon the better financial standing and prospects of the adopting party.

In our judgment, the deed of adoption, even if duly recorded, is of no legal force or effect against the appellants. It is true that the statute (Code, sections 3250–3254) makes provision by which one person may adopt the child of another,

giving to it all the rights and benefits which would accrue to a child born to him in lawful wedlock. It further provides that, to make the deed of adoption effectual, the child's parents, if living, shall unite in the deed, and consent to the adoption; or, if both parents be dead, or both have abandoned the child, then such consent shall be given by the mayor of the city, or by the clerk of the district court; and the instrument, when duly executed, must be recorded in the county where the adopting parent resides. It is also true that, waiving any objection concerning the proper record of the deed, a literal construction of these sections of the statute gives color of regularity to the deed now under consideration, but we cannot believe that in enacting these provisions the Legislature intended to make it legally possible that one who gives home and care to his orphaned grandchild should be deprived of its custody at the demand of any stranger or of any collateral relative who may present a deed of adoption bearing the consent of a nonjudicial county officer, given upon an *ex parte* application by one having no legal right to control the custody of the child. Our statutes make the parent the natural guardian of his child. Code, section 3192. This court has also approved the rule by which, upon the death of the parents, the grandfather or the grandmother, when next of kin, succeeds to the natural guardianship of the orphaned infant. *In re Benton,* 92 Iowa, 202; *Lamar v. Micou,* 114 U. S. 218 (5 Sup. Ct. 857, 29 L. Ed. 94). The responsibility thus imposed implies corresponding rights of which the natural guardian ought not to be deprived by arbitrary methods. A statute by which a parent or other natural guardian could be deprived of his child without notice or opportunity to be heard would, without doubt, be held void as an unconstitutional deprivation of right without due process of law; and it is the duty of the court, if the language of the act be fairly capable of it, to give it a construction by which its validity can be upheld.

The evident purpose of the statute upon which appellee

relies is not to provide a tribunal by which disputed rights to the custody of the child may be adjudicated or determined. It does no more than to recognize the immemorial practice of adoption, and require the evidence of such adoption to be formally reduced to writing and preserved of record, thereby removing all doubt of the fact and of the intention of the parties. So long as the natural parents are living, and have not abandoned the child, their participation in the execution of the instrument is essential to its validity; and, if both be dead, or both have abandoned their offspring, the law designates certain officers who may give the consent by which the instrument is made effectual and admissible to record. The mayor or clerk is nowhere given the power to pass upon the rights of persons who assert claims to the custody of the child, and such persons are in no manner estopped or foreclosed by the officer's act. Such is clearly the force and effect of the decision of this court in *Burger v. Frakes,* 67 Iowa, 460, where an adoption of a child having no living parents was held to be void, it being shown to have been made without the knowledge or consent of the child's lawful guardian. The rights of the appellants in the premises, whatever they may be, are therefore in no manner lessened or abridged by the deed of adoption. They are, as we have seen, the natural guardians of the child. From the first months of its life until removed by the order of the trial court its principal home had been with its grandparents. There is no dispute that they have given to this child of their dead daughter the tender love and care which usually mark such sacred relationship. Their poverty, which appears to be the chief argument against recognition of their claims, is not of that extreme or degrading type calling for the aid of charity, or exposing the child to actual want. Under such circumstances the court cannot and ought not disregard the natural and legal rights of these old people on no better ground than possible future financial and social advantages of the child. The guardianship of an infant is

at all times under the care of the court, and if the time shall come when, by reason of advanced age, infirmity, or misfortune, the appellants shall become unable to give their grandchild proper care, or if they shall prove neglectful of their duty to the charge they have assumed, the proper correction can then be applied.

Considerable attention has been given in argument to the alleged request of the plaintiff's mother to her parents concerning the care of her child. The appellee also claims that at the time of the death of her first husband, the mother of plaintiff, being then in poor health, requested that in case of her own decease Almon B. Holmes should take plaintiff into his family. A request of this nature, if well established, followed by an acceptance of the trust and reasonable observance of the duties assumed, is a circumstance of much weight as between claimants otherwise equal in right (Bonnett v. Bonnett, 61 Iowa, 199; Clark v. Bayer, 32 Ohio St. 299 (30 Am. Rep. 593); but it is not, under all circumstances, a controlling factor in the situation. Burger v. Frakes, 67 Iowa, 460. Assuming that both of the alleged requests were proven, the one made to the grandparents, being the last expression of the mother's intention, and being accepted upon their part, is entitled to the greater consideration. But we do not dispose of this case upon this ground alone. The grandparents, by virtue of their relationship, their character as natural guardians, and their actual possession and care of the child, stand first in the legal right to its custody — a right which they are not shown to have forfeited by any failure in the performance of the duties and obligations thus assumed. It follows from what we have said that the order appealed from must be reversed, and the case remanded for further proceedings in harmony with this opinion.— Reversed.