In re Guardianship of Harold Waite et al.

GUARDIAN AND WARD: Review of Appointment by Clerk. The court, in reviewing an appointment by the clerk, under Sec. 250, Code, 1897, of a guardian for a minor, will proceed, not on the theory that such review is, in effect, an application to *remove* the guardian, under Sec. 3198, Code, 1897, but *as though no appointment had been*

*made,* and will confirm the appointment by the clerk, or reject it and make a new appointment, as seems best for the minor.

**GUARDIAN AND WARD: Review of Appointment.** The finding of the district court in the selection of a guardian is entitled to great weight, and, on conflicting evidence, ought not to be disturbed.

**GUARDIAN AND WARD: Religion of Child and Relatives.** The courts will not arrogate to themselves the right to determine what religion, if Christian, will prove most beneficial to a child of tender years, and will take into consideration church affiliations of relatives with whom the child is likely to associate, only as bearing on the child's probable welfare in the future.

**GUARDIAN AND WARD: Paternal Grandmother as Natural Guardian.** A paternal grandmother of a minor child, both grandfathers being dead, and the maternal grandmother making no claim, is the natural guardian of the child, and, being such, will, in the appointment of a guardian, ordinarily be preferred to relatives not occupying such relation, *even though she may not be able personally to bestow care on the child.*

**GUARDIAN AND WARD: Guardian's Power to Change Ward's Residence.** A guardian, if acting in good faith, and in fact for the best interest of the ward, may change the residence of the ward to another state. It is, therefore, no insuperable objection to the appointment of a person as guardian that such person intends to place the ward in the custody of a person in a distant state, when it is also made to appear that such custodian is eminently fit and proper to have such child.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

DECEMBER 14, 1920.

ON application, Joseph A. Helmer, on February 21, 1920, was appointed guardian of the minor children of Harry and Mary Frances Waite, deceased. Thereafter, and on March 5th of the same year, Ida I. Waite prayed that he be removed, and that she be appointed guardian in his stead. On hearing, six days later, the previous order was so modified that Helmer was continued as guardian of the property, and Mrs. Waite appointed guardian of the persons. From this order, Helmer appeals.—*Affirmed.*

*Hart & Hart,* for appellant.

*Henry G. Walker,* for appellee.

LADD, J.—Harry Waite died, February 16, 1920, and his wife, Mary Frances, four days later. Two children, Harold, five years old, and Gertrude, three years old, survived them. On the day following the wife's death, her brother, Joseph A. Helmer, filed a petition with the clerk of the district court of Johnson County, praying that he be appointed guardian of the persons and property of these children, and the clerk issued letters of guardianship to him on the same day. On the 5th of March following, Ida I. Waite, widowed mother of Harry Waite, made application for the removal of Helmer as guardian, and that she be appointed guardian of the children in his stead, and the Johnson County Savings Bank guardian of their property. Hearing was had on March 11th of the same year, whereupon Helmer was continued as guardian of the minors' property, but removed as guardian of their persons, and Mrs. Waite was appointed in his stead. The evidence disclosed that Helmer is a prosperous groceryman, 43 years of age, with a family of wife and 4 children, aged, respectively, 15, 12, 10, and 4 years, and that his widowed mother, 74 years of age, in feeble health, is living with him, temporarily at least. They live in a home of 7 rooms, well located, and with reasonably good educational facilities. His purpose, as stated by himself, is to take these children into his home, and care for and educate them as his own children. He had not consulted anyone, prior to his appointment as guardian, and, when he went for the children where decedents had resided, he was assured that they would be well cared for while there. Upon his telling Mrs. Waite, who was sick and confined to her bed, that he had come for them, she exclaimed:

"Oh, don't do that; Harry has been taken away from me, and Mary is taken away; leave them with me; they are the only thing I have to content myself."

He responded that he would take them to see his mother, and then bring them back, and "let you and Mary take care of them until you get up, or further notice." Mrs. Waite had been

sick for some time, and, though but 62 years of age, does not appear to have been in good health; and she was unable to attend the trial. Her daughter, Mrs. Stoltenburg, lives at Kingsley, Kansas, and had assisted in nursing decedents some time before their death. She testified that Helmer told Mrs. Waite, the day after the wife's death, that he was willing that Mrs. Waite be appointed guardian. Helmer denied this. Mrs. Stoltenburg further testified that the first she knew of Helmer's appointment as guardian was when he exhibited his letters of guardianship upon his authority to dictate as to the children's being questioned; that she had arranged, if her mother was appointed guardian, to take Harold with her to Kansas, and rear and educate him as though her own child; that she had been graduated from the academy at Iowa City and attended the State University; that her husband was a graduate of a high school, and a practicing physician; that they had a six-room bungalow, a child's library, a Victrola, a piano, automobiles, and the like, and an only child, a son 13 years of age; that her husband joined her in wishing to care for the child; that they would return him to the guardian whenever required so to do by the guardian or court, should his mother be appointed; and that the mother was satisfied to allow her to have the care and the keeping of the boy. Another sister of Harry Waite's (and there were only three children in the family), Mrs. Spiers, resides at Spearville, Kansas, 23 miles distant from Kingsley. She has two boys, one 9 and the other 11 years of age; had always wanted Gertrude, though Harry would not allow her to take the child, because so far away. She also had arranged with her mother to take Gertrude to her home, and there care for and educate her, as though she were her own daughter. Her husband is a physician, a graduate of a college, and she had taught five years, being a graduate of an academy. They have a home, an Edison, a piano, a children's library, and automobiles. The children had continued in Mrs. Waite's care and custody, up to the time of the hearing.

I. Counsel for appellant insist that Helmer could be removed only for cause shown under Section 3198 of the Code. Though denominated as an application for removal, it was, in fact, a motion for the review of the action by the clerk of court

in appointing Helmer guardian. Section 250 of the Code authorizes the clerk to appoint, when not contested, guardians of minors, and Section 251 provides that:

1. GUARDIAN AND WARD: review of appointment by clerk.

"Any person aggrieved by any order made or entered by the clerk, under the powers conferred in the last section, may have the same reviewed in court, on motion filed at the next term and not afterwards, unless upon good cause shown within one year, and upon such notice as the court or a judge thereof may prescribe. Upon the filing of such motion, the clerk shall place the cause or proceeding on the docket without additional docket fee, and the matter shall stand for hearing or trial *de novo* in open court."

The hearing before the court proceeds as though no appointment had been made, and it is to be confirmed, or another appointed, as shall best serve the interests of the minors.

II. The appellant contends that the court, in appointing Mrs. Waite instead of Helmer, abused its discretion. The finding of the district court, in the selection of a guardian, is entitled to great weight, as the issue is at law, and, if the evidence is in conflict, such finding ought not to be disturbed. *Lawrence v. Thomas,* 84

2. GUARDIAN AND WARD: review of appointment.

Iowa 362; *In re Guardianship of O'Connell,* 102 Iowa 355. The character of neither contestant is assailed, and we entertain no doubt as to the good purpose of either to serve the best interests of these children. Each appears to be able to maintain them without charge against the estate of the children. No wish was shown to have been expressed by either parent, and there was no will. Even had such wish been expressed, or a guardian designated in a will, neither of these facts would have ousted the jurisdiction of the court to determine who should be guardian. These matters are always entitled to great consideration. The children are of tender years, and require care and nurture of a kind which only a woman can give, and, everything else being equal, are likely to have more affectionate consideration from the sisters of their father than from the wife of their mother's brother. The record does not disclose any personal attachment for the infants

3. GUARDIAN AND WARD: religion of child and relatives.

on the part of Helmer or his family, but does indicate an affec-

tion on Mrs. Spiers' part, at least, for Gertrude. Undoubtedly, the religious faith of the parents is a matter for consideration, though not controlling. See *Winter v. Winter*, 184 Iowa 85. The courts will not arrogate to themselves the right to determine what religion, if Christian, will prove most beneficial to a child of tender years, but will take into consideration church affiliations of relatives with whom the child is likely to associate, only as bearing on his probable welfare in the future. The parents of these children were of the Catholic faith, as is Helmer. Mrs. Waite has a preference for that denomination, though not a communicant. Mrs. Stoltenburg is a Congregationalist, and Mrs. Spiers is a member of the Presbyterian Church. We are not inclined to discuss critically nor to compare the tenets of faith approved by any denomination. It is thought sufficient if the children be taught the fundamental principles of Christianity, and reared according to its teachings. This is assured, whatever our conclusion.

Another circumstance of moment is that Mrs. Waite is their natural guardian, as both grandfathers are dead, and the maternal grandmother makes no claim to their custody. The children were in actual custody of Mrs. Waite, their paternal grandmother and next of kin, and, under the holding of *In re Guardianship of Benton*, 92 Iowa 202, and *Holmes v. Derrig*, 127 Iowa 625, she must be held to be their natural guardian. See, also, *Lamar v. Micou*, 114 U. S. 218 (29 L. Ed. 94). Ordinarily, a natural guardian will be preferred to one not sustaining that relation to infants, in the choice of guardian by the courts. That she may not bestow personal care on her wards will not justify a denial of appointment, unless it appear to the court that the welfare of the children will suffer thereby; and it does not so appear in this case.

4. GUARDIAN AND WARD: paternal grandmother as natural guardian.

Counsel for appellant contend that, inasmuch as the children are to be taken to Kansas by the daughters of Mrs. Waite, she ought not to be appointed. A guardian of the person of an infant stands *in loco parentis*, and may, if for the best interests of the infant, change his residence from one state to another. The English authorities go further, and recognize the right

5. GUARDIAN AND WARD: guardian's power to change ward's residence.

of the guardian to change the residence of his ward to the territory of another nation, though this must be with the consent or approval of the court appointing the guardian. In this country, the decisions uniformly hold that the guardian may change the residence of the ward, whether infant or lunatic, to another state, if this be done in good faith, and for the best interest of his ward, especially when with the consent or approval of the court appointing the guardian. The decisions are collected in a note to *State ex rel. Raymond v. Lawrence*, 86 Minn. 310 (58 L. R. A. 931). In the course of the opinion in that case, the rule is clearly stated by Collins, J., speaking for the court:

"While there can be no doubt of the right of a guardian to remove his ward temporarily from one state to another, or even to change the ward's place of residence from one state to another, such change or removal must always be in good faith, and with a view to the benefit of the ward. The right is always subject to the power of a court of chancery to forbid and restrain an improper removal or injudicious change. The welfare of the ward is the chief matter to be considered,—not the wishes of the relatives, nor the convenience of the guardian. The rule which governs in the case of an absolute incompetent, as is Mrs. Robinson, is that which prevails when the welfare of an infant child is before the court. The guardian does not have unlimited power over the ward, and cannot change its temporary or permanent residence to its detriment, and this is especially true where an attempt is made to remove the ward to a point outside of the jurisdiction of the court appointing the guardian. And the court of chancery has full and complete jurisdiction over the persons and the estates of infants and all others laboring under legal disability, as well as their guardians, trustees, or other custodians. It matters not whether the relationship results from natural ties or is created by law. The jurisdiction in such cases is plenary, and potent to reach and afford relief in every case of an improper exercise of the power to change the residence of a ward, and to take him beyond the jurisdiction of his appointment. As before stated, the power exists in the guardian to make a change, but there must be a proper and faithful exercise of it, and it must be for the benefit of the ward."

In *Wood v. Wood*, 5 Paige Chancery (N. Y.) 596 (28 Am.

Dec. 451), the chancellor observed that he had "no doubt as to the right of a parent or guardian to change the residence of his infant children, or wards, from one state to another, provided such change of residence is made in good faith, and with a view to their benefit; subject, however, to the power of this court to restrain an improper removal of an infant by his guardian, or even by his parent."

See *In re Wilkins' Guardian*, 146 Pa. 585 (23 Atl. 325). It appears from the testimony of Mrs. Stoltenburg that she and Mrs. Spiers had arranged with their mother to return the children to her if she at any time so desired; or they would retain them until they attained their majority. The court must have been content with this arrangement, and, in appointing Mrs. Waite guardian, yielded consent to their change of residence to Kansas. No one can question the good faith of the guardian appointed, and there was room for the finding of the court that the welfare of Harold and Gertrude would be subserved by assuring them the care, training, and education such as seemed assured in the homes of their aunts. Those offering to serve were before the court in giving their testimony, and so much depends on the personality in these matters that on this ground alone we should hesitate to interfere with the ruling. Though with not a little hesitation, we reach the conclusion that the record was open to the finding of the trial court, and, as this is to be accorded the same effect as a verdict by the jury, we ought not to interfere. The order appointing Mrs. Waite guardian of the persons of her grandchildren, Harold and Gertrude Waite, is— *Affirmed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.