IN RE GUARDIANSHIP OF KAREN DIANE LEHR, a minor child.

KAREN DIANE LEHR, a minor, by E. J. LEHR and WANDA MAY LEHR, her next friends, and GARTH E. LEHR, guardian of the person and estate of Karen Diane Lehr, appellants, v. HOWARD W. FORTE et ux., appellees.

No. 49368.

(Reported in 87 N.W.2d 909)

February 11, 1958.

Burnstedt, Hemingway & Hemingway, of Webster City, and. Donnell, Schoenbeck & Donnell, of St. Louis, Missouri, for appellants.

Phelan, Karr & Karr, of Webster City, and Carl A. Enger, of St. Louis, Missouri, for appellees.

PETERSON, C. J.—Glenn Lehr and his wife, Shirley, were residents of Affton, a suburb of St. Louis, Missouri. They were the parents of two small children, Keith, two years old, and Karen Diane, nine months old. Mrs. Lehr's father and mother, Mr. and Mrs. Howard W. Forte, are residents of Webster City, Iowa. In October 1956, Mr. and Mrs. Lehr with their two children made a trip to Webster City to visit the parents of Mrs. Lehr. October 27 they left the Forte home to return to Missouri. Near Jewell, Iowa, they had a tragic automobile accident. Mr. Lehr and Keith died immediately. Mrs. Lehr and Karen were taken to a hospital at Ames. That evening Mrs. Lehr died. Karen suffered a broken leg, but survived.

Mr. and Mrs. Lehr and Keith were returned to St. Louis, Missouri, for burial. When Mr. and Mrs. Forte returned from the funeral in Missouri they contacted the doctor for the purpose of removing Karen to a hospital in or close to Webster City. The doctor said it would be all right for them to take Karen to their home, which they did about November 5.

November 5, on application filed by his attorneys on his behalf, the clerk entered an order on the docket appointing

Howard W. Forte as the guardian of the property and person of Karen. In Missouri, Garth E. Lehr, paternal uncle of Karen, filed application on November 26 for appointment as her guardian. November 30 a hearing was held in the probate court of St. Louis County and the court appointed Garth E. Lehr as such guardian.

About December 9 Garth and Mrs. Lehr came to Webster City and requested the custody of Karen from Mr. and Mrs. Forte. They were denied such request. January 14, 1957, Dr. and Mrs. E. J. Lehr, paternal grandparents of Karen, and Garth E. Lehr, under his guardianship in Missouri, filed application in the district court of Hamilton County, Iowa, to terminate the Iowa guardianship of Karen. On the same day the same parties filed petition for writ of habeas corpus against Mr. and Mrs. Howard W. Forte, in which custody of Karen was demanded by Garth Lehr. The trial court decided in favor of defendants in both cases. Plaintiffs have appealed.

■ I. The court ordered the application to terminate guardianship and habeas corpus action consolidated for trial. Appellants claim the complete procedure is triable de novo. Appellees contend the guardianship proceeding was at law and that the decision of the trial court is binding upon this court unless there were errors at law, or the discretion of trial court was abused. Appellees agree the habeas corpus proceeding, when involving the custody of a minor, is triable in equity and is before us de novo. The court tried the guardianship proceeding as if at law, and the habeas corpus proceeding in equity. The evidence was all presented in one hearing. When it pertained to the guardianship the court ruled upon objections. In the matter of the guardianship the court entered findings of fact and judgment. In the habeas corpus case it entered separate findings and decree.

The two proceedings are, in fact, inseparable and pertain ultimately to the one question of the custody of Karen. There is no conflict as to the facts in the guardianship proceeding. There is a question of law raised by appellants which we will consider later.

In many early cases this court held that questions in guardianship proceedings were at law. Lawrence v. Thomas, 84 Iowa

362, 51 N.W. 11; In re Reimenschneider (Iowa, N. O. R.), 164 N.W. 736. Since about 1915 we have consistently held that proceedings of this nature, involving the custody of a minor, are triable de novo. Barnett v. Blakley, 202 Iowa 1, 209 N.W. 412; Jensen v. Sorenson, 211 Iowa 354, 367, 233 N.W. 717, 723; Ellison v. Platts, 226 Iowa 1211, 286 N.W. 413; Paulson v. Windelow, 236 Iowa 1011, 20 N.W.2d 470; In re Guardianship of Plucar, 247 Iowa 394, 396, 72 N.W.2d 455, 457.

In Jensen v. Sorenson, supra, we said: "The appellee urges upon us that the case is not triable de novo, and is reviewable on errors only. Where the issue turns upon the best welfare of the child, and involves the overturning of presumptive parental rights in the interest of the child, we have found it difficult to separate questions of law from questions of fact, and have found ourselves unable to adhere very strictly to the rule contended for by appellee. We have necessarily recognized the fact that the determination of such issues carries us into the field of equity, and that it is indispensable that principles of equity be applied."

We recently considered the question in In re Guardianship of Plucar, supra, using the following language: "Since the right to the child's custody is the principal matter in controversy it would seem our review should be de novo under the rule adopted in Jensen v. Sorenson, 211 Iowa 354, 367, 233 N.W. 717, 723, and subsequently adhered to many times. While the cited case was an action in habeas corpus it also involved the appointment of a guardian and a decree of adoption."

The distinction is not too important because we approve the findings of fact and judgment of the trial court in denying termination of the guardianship of Howard W. Forte.

■ II. It is important that we establish the domicile of Karen. Domicile is difficult to define briefly, but as a one sentence definition the best one appears in 17A Am. Jur., Domicile, section 2, as follows: "In legal relationships 'domicil' is the place with which a person has a settled connection for certain legal purposes, either because his home is there or because that place is assigned to him by the law." Domicile arises from three sources: origin; choice; operation of law. 13 Words

and Phrases, Domicile, p. 305; 17A Am. Jur., Domicile, section 12; 28 C. J. S., Domicile, section 4; In re Estate of Jones, 192 Iowa 78, 182 N.W. 227, 16 A. L. R. 1286, 1289.

██ In a headnote in case of In re Estate of Jones, supra, a clear statement appears: "Domiciles may be divided into three general classes, 'domicile of origin,' which is the domicile of a person's parents at the time of his birth, 'domicile of choice,' which is the place which a person has elected and chosen for himself to displace his previous domicile, and 'domicile by operation of law,' which is the domicile which the law attributes to a person independent of his own intention or residence."

 Since Karen was not sui juris, with no power of choice, her domicile is established by operation of law. If both parents are living they are the natural guardians of their children. If both parents are deceased, as in this case, the grandparents are the natural guardians. In re Guardianship of Benton, 92 Iowa 202, 60 N.W. 614, 54 Am. St. Rep. 546; Holmes v. Derrig, 127 Iowa 625, 103 N.W. 973; In re Guardianship of Waite, 190 Iowa 182, 180 N.W. 159; Lamar v. Micou, 114 U. S. 218, 5 S. Ct. 857, 29 L. Ed. 94; Re James Bryant Hall's Guardianship, 235 N. C. 697, 71 S.E.2d 140, 32 A. L. R.2d 856.

██ Dr. and Mrs. Lehr, the paternal grandparents, waived their rights to custody, and therefore, as a matter of law, abandoned their claim to Karen. This established Mr. and Mrs. Forte, the maternal grandparents, as natural guardians. In re Guardianship of Waite, supra. Mr. and Mrs. Forte as natural guardians had the right to take Karen from the hospital to their home in Webster City. Mr. Forte had the right to be appointed guardian of the person of Karen in the District Court of Hamilton County. We said in In re Guardianship of Waite, supra, at page 187 of 190 Iowa: "Ordinarily, a natural guardian will be preferred to one not sustaining that relation to infants, in the choice of guardian by the courts."

After the death of Mr. and Mrs. Glenn Lehr the domicile of Karen remained in Missouri at the home of the family until legally changed. 17A Am. Jur., Domicile, section 64; 28 C. J. S., Domicile, section 12b(6). Mr. and Mrs. Forte, the grandparents, changed her domicile to Webster City. When they removed her from the hospital to their home, with the intention of assuming

her permanent custody, they completed that change. Their intention of accepting her into the home as a member of the family was established by their statements to that effect, and by their acts. They purchased a baby bed for her and arranged a place for her in the home on a permanent basis.

In the early case of Holmes v. Derrig, supra, at page 629 of 127 Iowa, we said: "This court has also approved the rule by which, upon the death of the parents, the grandfather or the grandmother, when next of kin, succeeds to the natural guardianship of the orphaned infant." Citing In re Guardianship of Benton and Lamar v. Micou, both supra.

In In re Guardianship of Benton, supra, we approved (page 205 of 92 Iowa) the following statement: "After the death of both parents, infants, who take up their residence at the home of the paternal grandparent or next of kin, in another state, will acquire such grandparent's domicile. Schouler, Dom. Rel. section 303."

A statement (page 187 of 190 Iowa) in case of In re Guardianship of Waite, supra, is significant as to waiver of claim to Karen by paternal grandparents: "Another circumstance of moment is that Mrs. Waite is their natural guardian, as both grandfathers are dead, and the maternal grandmother *makes no claim to their custody.* The children were in actual custody of Mrs. Waite, their paternal grandmother and next of kin, and, under the holding of In re Guardianship of Benton [supra], and Holmes v. Derrig [supra], she must be held to be their natural guardian." (Emphasis ours.)

In In re Guardianship of Plucar, supra, at page 405 of 247 Iowa we said: "Where both parents die and the child makes its home with its grandparents who act in good faith it acquires the domicile of the grandparents." Citations.

Beale on Conflict of Laws, Volume I, Domicile, section 39.1, page 222, states: "When both parents of a minor child are dead and no legal guardian of the person has been appointed, the grandparent who takes the child to his home and actually stands *in loco parentis* to the child becomes the natural guardian; the domicile of the grandparent thereupon becomes the domicile of the child * * *."

Lamar v. Micou, supra, is a leading case in this field. The

father of two minor children died in Florida. The mother moved to Connecticut and passed away. The paternal grandmother then took the children to her home in Georgia. The court said at page 223 of 114 U. S., page 859 of 5 S. Ct.: "Under these circumstances, there can be no doubt that by taking up their residence with her [grandmother] they acquired her domicile in that state * * *."

The annotations in 32 A. L. R.2d, page 864, state: "A substantial majority of the cases dealing with the question [domicile] have held a natural guardian, other than the parents, has the same power as the parent to change the infant's domicile, standing in all respects substantially in the place of the parents." And at page 871: "The courts have been reluctant to extend the doctrine of natural guardianship beyond the grandparents, holding, in several cases, that the fact that the infant resided with or was under the custody of uncles or aunts did not change his domicile to concur with theirs."

III. Appellants place great emphasis on the method and sequence of appointment of Howard W. Forte as guardian for the person and property of Karen in Hamilton County, Iowa, and of Garth Lehr in St. Louis County, Missouri. Howard W. Forte was appointed by following order entered on probate docket by clerk of district court of Hamilton County: "November 5, 1956, prayer of the petition granted and Howard W. Forte be and is hereby appointed guardian of the person and property of Karen Diane Lehr, a minor child, bond fixed in the sum of one thousand dollars." Bond was filed immediately and letters of guardianship issued. It seems that through inadvertence the clerk did not prepare a formal order at that time for filing in the guardianship file. Later, her attention was directed to the matter and on December 12 she prepared, signed and filed such formal order dating same November 5.

Garth Lehr was appointed guardian of the property and person of Karen in St. Louis County, Missouri, on November 30. Appellants contend as to these facts that Garth Lehr was legally appointed on November 30 and Howard W. Forte was not legally appointed until December 12. They contend Garth's prior appointment entitles him to custody of the person of Karen.

Section 632.1, 1954 Code, provides with reference to duties of clerk of court in probate matters: "The clerk of the district court shall have and exercise within his county all the powers and jurisdiction of the court and of the judge thereof, in the following matters: 1. The appointment, when not contested, of resident administrators, executors, and guardians of minors, and fixing and determining the amount of the bond thereof and the approval of any and all bonds given by administrators, executors, trustees, and guardians in the discharge of their several trusts."

The clerk of the district court of Hamilton County had authority to appoint a guardian for Karen. She was in the custody of Mr. Forte, her grandfather, and within the jurisdiction of the Hamilton County District Court. The order of the clerk written in her own handwriting in the probate docket on November 5 effectively accomplished the appointment. The matter of signing the formal order on December 12 was a matter of completing the record. Under the circumstances the clerk, in fact, had a right to sign the order on December 12 and consider same a nunc pro tunc order as of November 5. The trial court so held in the guardianship proceeding, and we approve his finding.

Taking a broad view of all facts in this case it is not a question of who won the foot race to the courthouse. Even if Garth Lehr had been appointed first in St. Louis County, or had been the only appointed guardian, our final decision would still be the same. Since the ultimate question is Karen's welfare, and since the maternal grandparents as natural guardians of Karen had the right to change her domicile to Hamilton County, as we have outlined in a previous division, these conditions constitute sufficient basis for the decision as to custody. Boor v. Boor, 241 Iowa 973, 43 N.W.2d 155; In re Guardianship of Plucar, supra.

■ IV. Unless there is some jurisdictional or other legal question involved which prevents its consideration, the important question is the best interest of Karen. We have disposed of the legal questions in previous divisions. This court has held in many cases of this nature that the paramount question is the welfare of the child. Dunkin v. Seifert, 123 Iowa 64, 98 N.W.

558; Holmes v. Derrig and Jensen v. Sorenson, both supra; Pelton v. Halverson, 240 Iowa 184, 35 N.W.2d 759; Boor v. Boor and In re Guardianship of Plucar, both supra; Finken v. Porter, 246 Iowa 1345, 72 N.W.2d 445; Re James Bryant Hall's Guardianship, supra.

In Jensen v. Sorenson, supra (page 367 of 211 Iowa), we made the following general statement: " 'In cases involving the custody of children, the writ of habeas corpus operates to invoke the broad powers of the court of an equitable nature, to determine the question of custody of a minor child according as the welfare and best interests of the child may require, having due regard to the legal rights of parents or others.' "

 The question of Karen's best interest is close. Both families are fine people. The opposing attorneys frankly so stated in oral argument. The facts need close analysis to see which way the scales tip. As contended by counsel for appellants the advantages offered Karen by the Lehr family are: 1. Their life expectancy is considerably longer than that of Mr. and Mrs. Forte. 2. At St. Louis she will be within a larger family circle. 3. She will be reared in a beautiful new ranch home in the same community in which her parents lived. 4. It will be greatly to her economic advantage. 5. She will secure a fine education including college. 6. She will be the only child in the home.

What are the facts concerning these matters, as to the maternal grandparents?

As to the matter of life expectancy Mr. Forte is fifty-three and his wife forty-nine years old. Mr. and Mrs. Garth Lehr are approximately forty years of age. Mr. and Mrs. Forte are still in the prime of life, and this is not a controlling factor.

Concerning the question of a larger family circle at St. Louis the facts are that in Missouri there are four relatives: the two paternal grandparents and the uncle and aunt. In Iowa there are four relatives: the two maternal grandparents and their two children, eleven and thirteen years of age.

As to the community and the home, the maternal grandparents live in a beautiful county seat Iowa town of about ten thousand population. They own a two-story seven-room home with four bedrooms. Mr. Forte paid $8500 for the home several years ago. It is true that a railroad track runs close to the rear

of the lot and there are some industrial establishments not too far distant from the home. The neighborhood, however, is predominantly a residential area. Mr. Forte testified: "Across the street from my house is a single residence. And that is all single residences for several blocks on both sides of the street. Also all single residences west of my house for several blocks. This is true east from my house to Beam Manufacturing plant about four blocks east. * * * The area across the street from me is zoned for residential area." The home is located only a few blocks from a new school. In Jensen v. Sorenson, supra (page 364 of 211 Iowa), we said: "The fact, if such, that the Jensen home would be a still better place from a financial and educational point of view, is not controlling."

There may be some economic advantage for Karen in the Lehr home. However, the grandparents' economic situation is satisfactory. Mr. Forte earns $4000 a year. We cannot completely ignore the economic situation of various claimants in considering the welfare of a minor. If we were confronted with a case where a condition of hopeless poverty existed as to a claimant, that would create a pertinent problem for consideration. Where one claimant is wealthy, and the other has reasonable financial security, the economic element is not a factor to be considered.

We said in Holmes v. Derrig, supra, at page 630 of 127 Iowa: "There is no dispute that they [grandparents] have given to this child of their dead daughter the tender love and care which usually mark such sacred relationship. Their poverty, which appears to be the chief argument against recognition of their claims, is not of that extreme or degrading type calling for the aid of charity, or exposing the child to actual want. Under such circumstances the court cannot and ought not disregard the natural and legal rights of these old people on no better ground than possible future financial and social advantages of the child."

As to the question of education Karen will attend the fine public schools of Webster City. We cannot look into the future with certainty, but on the basis of Mr. Forte's earnings, if Karen wants a college career, her maternal grandparents can and no doubt will provide it for her.

In some cases what may seem small or intangible matters decide issues. There are two conditions in the facts of this case in favor of the maternal grandparents, on the basis of which we concur in the trial court's decision. One is the affection of a grandmother for her grandchildren. It is not quite as strong, but is akin to a mother's affection. We approve the language of the trial court: "Where the parents are dead the only logical and plausible arrangement that could be made is for the substitution of the grandparents and more particularly the grandmother. There is just no substitution for a grandmother, and none will or can be found to transmit to the orphaned child the natural love, affection and care to be given to it [like a grandmother]." As an example, when Karen was a helpless nine-month-old child, with leg and part of her body encased in a cast, it was the maternal grandmother and grandfather who went to the hospital and took her to their home. They nurtured and cared for her, and brought her back to health. The uncle and aunt did not show up and demand her custody until nearly seven weeks later, when the critical period of need, resulting from the automobile accident, was past.

The other condition is the presence of two other young children in the Forte home. There is a value for life in the fact of several children being reared together through childhood. Karen would miss this value and training in the uncle's home. Garth and his wife have been married for ten years. They have no children, either natural or by adoption, to give Karen the companionship of brother and sister.

In Holmes v. Derrig, supra (pages 628, 631 of 127 Iowa), we said: "* * * in the absence of extreme neglect of natural and legal duty courts will always be slow in refusing recognition to the paramount right of the parent, or of one who is by nature in loco parentis. * * * The grandparents, by virtue of their relationship, their character as natural guardians, and their actual possession and care of the child, stand first in the legal right of its custody—a right which they have not shown to have forfeited by any failure in the performance of the duties and obligations thus assumed."

While a similar factual situation does not seem to have been presented to this court we find a case in North Carolina which

is almost identical. It is reported in 32 A. L. R.2d 856 and has established some weight of authority as to the principles involved in the case at bar. Re James Bryant Hall's Guardianship, supra. James became orphaned as a small child and the controversy was between his paternal grandfather and maternal aunt. The paternal grandfather took possession of the child as next of kin after the death of his surviving parent. The grandfather was appointed guardian by the clerk of the court in which he was domiciled. Subsequently the maternal aunt secured appointment as guardian by order of the clerk of the county wherein the child was residing with his mother at the time of her death. The court held that upon the child taking residence with the grandfather, the latter became the former's guardian by nature; that the domicile of the grandparent then became the domicile of the child; that the clerk of the court of the county of domicile had jurisdiction to appoint the guardian, regardless of what county may theretofore have been the child's domicile. The court granted custody to the paternal grandfather.

 While not controlling on a trial de novo, we give appropriate weight to the findings and decision of the trial court. The able and experienced trial judge in this case had the benefit of observation of the members of the two families as they appeared as witnesses. Justice v. Hobbs, 245 Iowa 707, 63 N.W.2d 882; Finken v. Porter, supra.

The judgment of the trial court as to the guardianship proceeding and decree as to the habeas corpus case are affirmed.— Affirmed.

All JUSTICES concur except SMITH, J., not sitting.