IN RE GUARDIANSHIP OF CYNTHIA ANN CARRICK, a minor.

MARJORIE O. CARRICK, appellant, v. ERNESTINE E. STODDARD, appellee.

No. 49749.

(Reported in 98 N.W.2d 315)

1182

Sᴇᴘᴛᴇᴍʙᴇʀ 22, 1959.

Joy & Wifvat and Willis & Willis, all of Perry, for appellant.

Batschelet & Thompson, of Guthrie Center, for appellee.

Oʟɪᴠᴇʀ, J.—The basic issue in this case is the guardianship, which carries with it the custody of the person, of Cynthia Ann Carrick, born October 19, 1956. Cynthia, frequently called Cindy, was the only child of Clyde and Martha (Marty) Carrick who lost their lives July 2, 1958, in a flood in western Iowa. The contest over the guardianship of Cindy is nominally between Marjorie O. Carrick, the adoptive mother of Cindy's father, Clyde Carrick, and Ernestine E. Stoddard, the natural sister of Cindy's mother, Martha Carrick. However, the cus-

todial controversy necessarily involves also Harold Carrick, the husband of Marjorie, and William H. Stoddard, Jr., the husband of Ernestine.

Also involved are Beth Penninger, the adopted daughter of the senior Carricks, and her husband, Dale Penninger. Although they were not made parties in this case the Penningers were brought into the picture by the application of the senior Mrs. Carrick, as Cindy's guardian, for authority to execute consent to Cindy's adoption by the Penningers. In that connection Mrs. Carrick Sr. testified that if the court determined she (Mrs. Carrick Sr.) should not have Cindy's custody, she would like to have Beth and Dale Penninger rear the child.

Appellee, Ernestine E. Stoddard, and her husband, William H. Stoddard Jr., are the natural parents of Linda Stoddard, born in June 1955. William H. Stoddard Jr. had been in the United States Air Force for twelve years and in 1958 was a Technical Sergeant stationed in Greece. Ernestine and their daughter, Linda, were with him. In July 1958 Ernestine Stoddard returned from Greece by air for the funeral of her sister Martha Carrick and Martha's husband, Clyde. Thereafter William Stoddard's tour of duty in Greece was terminated and he was assigned to the Air Force Base at Little Rock, Arkansas.

Ernestine Stoddard and Martha Carrick had been very close to each other. When their mother died, Ernestine, then sixteen, left high school and took over the care of the Mississippi farm home and of Martha who was then age ten years. About four years later Ernestine married airman Stoddard. He was stationed at Cheyenne, Wyoming, for several years. Martha went to Cheyenne and lived with the Stoddards until her marriage to Clyde Carrick, some years later. During that period Martha attended and graduated from Cheyenne high school and was supported, cared for and advised by Ernestine, almost as a daughter.

Clyde Carrick was then stationed at the base chapel in Denver, Colorado. He married Martha in 1955, and they lived in Denver. While the Stoddards lived in Cheyenne the two young couples frequently spent their week ends together. Later the Stoddards were transferred to Florida and were there visited by Clyde and Martha. Thereafter Ernestine accompanied

by her daughter, Linda, went from Florida to Denver to help Martha when Cindy was born, in October 1956. In the meantime Sergeant Stoddard had been transferred to Greece.

Until Ernestine joined her husband in Greece several months later, she and Linda lived with Martha, Clyde and Cindy in Denver. A witness testified Ernestine was up with Cindy night and day, like Martha, fed Cindy part of the time and otherwise cared for her. This witness testified also to conversations between Clyde, Martha and Ernestine shortly before Ernestine and Linda went overseas. "They discussed Cindy and Linda and mentioned the fact that they could grow up together as twins practically; * * * if anything happened to Ernie and Bill, Clyde and Marty were to take Linda and raise her as their own, and Ernie and Bill would take Cindy if anything happened to Clyde and Marty." Subsequent correspondence between Martha in the United States and Ernestine in Greece, (letters signed Clyde, Marty and Cindy to Ernie, Bill and Linda and vice versa) shows the continuing affection of each young family for the members of the other.

The senior Carricks owned and operated a 160-acre farm near Bagley, Iowa. In January 1958 they moved to Bagley and arranged with their adopted son, Clyde, to operate the farm on a share-rent basis. Clyde and Martha, with their baby, Cindy, came from Denver, Colorado, and occupied the farm until Clyde and Martha lost their lives six months later. During that period the senior Carricks spent much time at the farm and occasionally cared for Cindy at their home in Bagley. Cindy was left at the home of the senior Carricks when her parents took the trip upon which they lost their lives.

The record indicates Clyde and Martha were not happy living upon the Carrick farm and were arranging to return to Denver, despite anticipated hardships. Apparently this was due largely to personality clashes between them and the senior Carricks, resulting from what Clyde and Martha thought was too much surveillance and dictation by Clyde's adoptive parents.

July 7, 1958, upon the petition of the senior Carricks, the Clerk of the District Court of Guthrie County made an ex parte order appointing Marjorie O. Carrick guardian of the person and property of Cynthia Ann Carrick. August 12, Ernestine E.

Stoddard, made application for review · of the appointment. August 12, 1958, the Stoddards filed petition to adopt Cynthia. September 25, Mrs. Carrick filed Resistance to said petition. September 27, Mrs. Carrick filed Application for Authority to Execute Consent to Adoption of Cynthia by Beth Penninger and husband. After a pretrial conference the case was tried in equity September 27 to 29, 1958.

Marjorie Carrick testified Clyde's estate, which Cindy inherited, consisted only of his automobile and his share of the 1958 crop and increase of the livestock on the farm. Clyde had three thousand dollars life insurance but Harold Carrick had paid the premiums and was the beneficiary named in the policies. However, Cindy had been allowed social security in the amount of $67 per month. Both the Carricks and the Stoddards testified they did not expect to use this for her support. ·

There is no suggestion in the record that the persons interested in this case are not of excellent character. Marjorie Carrick is and has been an active leader in religious, educational and civic work in and around Bagley. Her husband, Harold, was a successful farmer with similar interests. They have a good home in Bagley and substantial income from their property. Marjorie Carrick is a diabetic and requires insulin and a special diet but has not been incapacitated by her ailment and has been in good health otherwise.

The record shows the Stoddards are a religious and wholesome young couple. At the time of the trial, Master Sergeant William Stoddard was drawing $350 per month and had life insurance, savings in a mutual trust fund and Government Bonds. He had been assigned to the Air Force Base at Little Rock, Arkansas, where he would be furnished an adequate new house and utilities for himself and family. That base provides schools for children of its occupants, a chapel for religious services and swimming pools and other recreational facilities for adults and children.

At the trial Ernestine testified that upon her return from Greece for the funeral of Cindy's parents she talked to the senior Carricks about taking Cindy. "They said they hadn't made up their minds yet." She talked to Beth Penninger also, who said, " 'I have three and I have my hands full, * * *.' " Beth

was then twenty-one years old and her three children were one, two and three years of age. Some time after that Mr. Carrick Sr. said they were going to let Beth have Cindy, "that they didn't intend to keep the child" but were going to hire help for Beth.

The district court rendered judgment setting aside the appointment of Marjorie O. Carrick as guardian of the person of Cindy and appointing Ernestine Stoddard as such guardian. Marjorie O. Carrick has appealed.

I. Sections 632.1(1), 632.3 and 632.4, Code of Iowa, 1958, provide for the appointment by the clerk of the district court, when not contested, of guardians of minors, etc., and the review thereof by the court, upon application therefor. The hearing before the court, in such a matter, is de novo and proceeds as though no such appointment had been made. In re Guardianship of Waite, 190 Iowa 182, 180 N.W. 159.

II. The guardian of the person of a minor is entitled to the custody of the ward. Section 668.2, Code of Iowa, 1958; Finken v. Porter, 246 Iowa 1345, 1354, 72 N.W.2d 445. In child-custody cases the welfare of the child is the controlling consideration. Durst v. Roach, 245 Iowa 342, 344, 62 N.W.2d 159; In re Guardianship of Lehr, 249 Iowa 625, 633, 87 N.W.2d 909, 914, and citations.

The judgment of the district court recites:

"In this case the Court finds as a fact and concludes as a matter of law that Cindy's best interests and welfare will be best served by appointing Ernestine E. Stoddard as the guardian of her person.

"The Court finds that the age of Ernestine and her husband, being 27 and 29 years respectively, will give them a distinct advantage in being able to understand, advise, and cope with Cindy and her problems from babyhood through the adolescent years to maturity. The Court finds that Marjorie and Harold Carrick, being 54 and 66 years of age respectively, are handicapped by reason of the fact that their age is such that it is more difficult for them to have the patience and be able to understand and cope with the problems of a two-year-old child and because of their shorter life expectancy, the probability of their living to

rear Cindy to maturity is much less than that of Ernestine and her husband.

"The Penningers are young and apparently good people, but the Court feels that with three children of their own under three years of age and the possibility of the birth of other children of their own that they are not as well suited to make a home for Cindy and to rear her as the Stoddards. In arriving at this conclusion the Court has taken into consideration the financial condition of each family, the income of each, the living conditions, the existing family responsibilities of each, and all other matters that were brought out by the evidence."

The judgment appointed Mrs. Stoddard guardian of the person of Cynthia, awarded her the custody of Cynthia, fixed the guardian's bond at $3000, provided for visitation rights of the senior Carricks, required detailed reports by the guardian and ordered that the guardian execute no consent to the adoption of Cynthia without formal authorization by said court.

The trial judge saw and heard the parties and other witnesses and his findings are entitled to substantial weight. Our consideration of the record leads us to conclude said findings should be approved and the judgment affirmed.

■ III. Reference has been made to evidence of the agreement between Cindy's parents and Ernestine Stoddard, shortly before her departure for Greece, that "if anything happened" to the parents of either Cindy or Linda the two baby girl cousins should be reared together by the surviving couple "as twins practically." Evidence of this nature is entitled to consideration. Finken v. Porter, 246 Iowa 1345, 1348, 72 N.W.2d 445, 446; Holmes v. Derrig, 127 Iowa 625, 631, 103 N.W. 973; Jensen v. Sorenson, 211 Iowa 354, 361, 362, 233 N.W. 717, 721; In re Guardianship of O'Connell, 102 Iowa 355, 356, 71 N.W. 211; Joiner v. Knieriem, 243 Iowa 470, 482, 52 N.W.2d 21, 28.

It is not surprising each sister should feel that, aside from herself, the other was the best person in the world to mother her child. The two sisters were not only most intimate and affectionate but they were also the only near female blood relatives of the two baby girls. It is fair to say their agreement appears to have been sensible.

1188

■ IV. The appointment of Marjorie Carrick as guardian of the property of Cynthia was not set aside. One reason stated in the judgment was Mrs. Carrick Sr. as a resident of Iowa was in the better position to handle the settlement of the ward's interest in Iowa property. We have held it is not improper for the guardianship of the person of a minor and guardianship of its property to be vested in different persons. Finken v. Porter, 246 Iowa 1345, 1354, 72 N.W.2d 445, 450; Lawrence v. Thomas, 84 Iowa 362, 51 N.W. 11.

■ V. Appellant contends the appointment of Ernestine Stoddard as guardian of Cindy was erroneous because the guardian was a nonresident of Iowa. We have several times referred with approval to the following statement from 27 C. J. S., Divorce, section 313:

"It is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby, and ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state." Jensen v. Jensen, 237 Iowa 1323, 1329, 1330, 25 N.W.2d 316; Blundi v. Blundi, 243 Iowa 1219, 1225, 55 N.W.2d 239; McKay v. Ruffcorn, 247 Iowa 195, 203, 73 N.W.2d 78.

However, when it has appeared to be for the best interests of the child we have not hesitated to grant its custody to a nonresident of the state. Justice v. Hobbs, 245 Iowa 707–712, 63 N.W.2d 882, 885; In re Guardianship of Waite, 190 Iowa 182, 180 N.W. 159. Upon this proposition the author of an annotation in 15 A. L. R.2d 432, 439, states:

"The overwhelming weight of authority is to the effect that a nonresident or one who intends to become a nonresident will not be deprived of the right to the custody of a child merely because of his nonresidence, and that if the interests of the child will thereby be promoted, custody of children will be awarded to nonresidents, the same as it would be to residents, * * *."

In the case at bar we have not overlooked the circumstance Mrs. Stoddard is a nonresident of the state. Notwithstanding it we have concluded the welfare of Cynthia will be best served by Mrs. Stoddard's appointment as guardian of her person.

The judgment of the district court is affirmed.—Affirmed.

All JUSTICES concur.