LUCIEN JOHN CARRERE, appellee, v. ROBERT F. PRUNTY et al., appellants.

No. 51610.

(Reported in 133 N.W.2d 692)

MARCH 9, 1965.

N. E. McManus, of Keokuk, for appellants.

Boyd, Walker & Concannon, of Keokuk, for appellee.

SNELL, J.—This is a proceeding in habeas corpus wherein the father of an eight-year-old (at time of trial) girl sought an order requiring the maternal grandparents to surrender custody of the girl.

The plaintiff is the father of the child. He lives in Alabama. The child is living with her maternal grandparents in Keokuk, Iowa. Her mother is dead. The grandmother is her guardian. The defendants are the grandparents and an uncle. The uncle is married, living with his own family and does not have custody of the child.

Plaintiff and defendants' daughter, mother of the child, were married in December 1954. To this union was born a daughter, Gayle Lynn, whose custody is the subject of this action. The marriage was obviously not harmonious. According to plaintiff's testimony there were several temporary and a final separation in October 1960 culminating in divorce. Since the separation of her parents in October 1960 their daughter, Gayle, has lived continuously in the home of her grandparents, defendants herein.

On May 18, 1961, Gayle's mother was granted a divorce from plaintiff herein. The mother was granted absolute custody and control of the daughter, Gayle. The court reserved jurisdiction as to visitation rights by the father, plaintiff herein. It does not appear that the father has ever sought or attempted any visitation rights.

In the divorce decree the defendant (plaintiff herein) was ordered to pay debts totaling $1361.40, court costs and attorney fees in the sum of $171.90 and child support in the sum of $40 per month from May 18, 1961. Of these obligations plaintiff herein has paid $415.05 after he and his former wife had been sued. Some of the other obligations have been paid but not by plaintiff.

On the child support obligation plaintiff paid nothing until March 28, 1963, at which time he paid into court $720. This payment was less than the accumulated delinquencies at that time and was after plaintiff had started this action and defendants had challenged his rights because he was in contempt of court for nonpayment. In the meantime, as will be noted later, he managed to escape service of process under the Uniform Support of Dependents Law.

In affidavits as to newly discovered evidence attached to a motion for new trial it was alleged that plaintiff had been married twice before; that in New Orleans he had been deprived of the custody of a child by a former marriage as not a fit person; and in Illinois had been adjudged to be a habitual drunkard in a divorce proceeding.

The trial court found the allegations as to newly discovered evidence not timely and without showing of diligence sufficient to permit consideration. It is true that there was no such showing of diligence in discovering this evidence as would ordi-

narily be required, but child welfare in habeas corpus involves more than the procedural rights of the adversaries. The alleged facts were so germane and pertinent to the fitness of plaintiff to have custody of a child we think the truth thereof should have been determined by the trial court. If the alleged facts were true they should have been considered.

Plaintiff is a schoolteacher residing in Montgomery, Alabama. He has a bachelor of science degree and is qualified to teach several subjects. He listed nine different jobs he has had since he graduated. Not all were in the field of teaching. Except for the last two years his employment had little stability.

There is no evidence of anything except minimal interest in Gayle by plaintiff. He testified that he sent her holiday and occasional greetings and presents but these were usually sent from the home of his mother or sister. His own whereabouts were not disclosed. He sent no money. With a callous disregard for the welfare of his daughter he dodged his responsibilities. Fortunately the maternal grandparents were around.

On September 6, 1961, the county attorney of Lee County instituted proceedings against plaintiff under the Uniform Support of Dependents Law. The petition and supporting papers were forwarded to the authorities in New Orleans, Louisiana, his residence at the time of the divorce, for service. He could not be located. Information indicated he had moved to Mobile, Alabama. He could not be located for service there. Three different efforts were made to locate him without success.

In February 1962 in connection with efforts to serve plaintiff with notice a summons came into the hands of his mother in Mobile, Alabama. She returned it to the authorities in New Orleans by letter. The letter was neither friendly nor cooperative. The last paragraph of her letter was as follows:

"Unfortunately I have been unable to contact my son, as he has not lived at my address since June of '61 and I do not know of his whereabouts at this time. Therefore, he is unable to appear in court on the appointed date."

On July 10, 1961, less than two months after he was divorced, plaintiff married his present wife. She testified it was his third or fourth and her first marriage. According to the testi-

mony she is a lady of good character and reputation. She is presently employed but said she wanted Gayle in her home and if necessary would retire from work to care for the family. This would reduce the family income.

In March 1963 plaintiff and his wife bought a six-room, two-bedroom brick home in Montgomery, Alabama. The purchase price was $11,600 financed under the G.I. Bill of Rights with no down payment by plaintiff. The monthly payments are $72.33. Unless there has been a recent appreciation of values in Montgomery plaintiff's equity in the house is very small.

Character witnesses called by plaintiff and who had known him and his present wife for from a few months to two years in Montgomery testified to their fitness to have custody of a child. They testified by oral deposition. None knew plaintiff's prior record.

During the first five years of Gayle's life her parents separated several times. During much of her life since birth Gayle has lived with her grandparents. She has been living in her grandparents' home continuously since October 1960. She has never known any other home with any semblance of stability or harmony. She is healthy, happy and well behaved. She is doing well in school, attends Sunday school, is clean, well cared for and loved.

Gayle's mother, together with Gayle, lived with defendants for some time prior to and after her divorce. Her mother was killed in an automobile accident in December 1962. Gayle's mother had full social security coverage. The grandmother, as guardian, is receiving $69 per month social security payments. What other assets came to Gayle through her mother does not appear, but the evidence is undisputed that "her mother left her amply provided for clear through college." The grandparents furnish full support for Gayle and her assets are accumulating for her own future benefit.

The evidence is overwhelming and undisputed that the grandparents are good people and are providing Gayle with a good home. Even plaintiff admits that. The grandparents are not rich but they own their home (unencumbered) and have an income adequate to their needs and the support of Gayle. At the

time of trial Mr. Prunty was 67 years old and retired on a pension after twenty-five years' service with the corps of engineers. He had the equivalent of an engineer's rating with the corps of engineers. He was still acting as director of civil defense for Lee County. He was in good health except for some minor problems incident to his age.

Mrs. Prunty was 62 and in good health. She had two years of college and three years of nurse's training.

The Pruntys have a married son, Gayle's uncle, named as a defendant herein, who expressed willingness to care for Gayle if anything happened to his parents.

The Pruntys have another son, unmarried, slightly retarded and handicapped, living at home. There is no evidence whatsoever that this creates any problem as far as Gayle is concerned.

Because of the age of defendants, the presence in their home of a retarded son and the statutory right of a parent as the natural guardian of minor children, the trial court ordered custody of the child surrendered to plaintiff.

I. Habeas corpus actions involving custody of minors are treated as equitable in nature, reviewable de novo. Finken v. Porter, 246 Iowa 1345, 1347, 72 N.W.2d 445, and cases cited therein. Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 1398, 121 N.W.2d 216, 220.

Some of our decisions say the trial court's findings are entitled to much or substantial weight. "This, however, seems too strong in view of our duty to review the case de novo." Huston v. Huston, 255 Iowa 543, 550, 122 N.W.2d 892. We give weight to the findings of the trial court, but are not bound by them. Rule 344(f)7, Rules of Civil Procedure.

II. Sections 668.1 and 668.2, Code of Iowa, 1962, giving parents preference in appointment of a guardian were in force when this case was tried. These statutes have now been repealed and section 559, Iowa Probate Code, adapted and enacted in lieu thereof. Parents are still preferred "over all others" "if qualified and suitable." In the case before us when the need for a guardian arose Mrs. Prunty was appointed. Plaintiff had financially abandoned his child. It does not appear that the propriety of the appointment has even been challenged, except in this proceeding

plaintiff asks that the guardianship be terminated. In the light of the whole record plaintiff's claim to a preference under these statutes is weak.

■ The right of a surviving parent to the custody of his child may be relinquished by abandonment. In re Guardianship of Plucar, 247 Iowa 394, 400, 72 N.W.2d 455, and cases cited therein.

■ III. Defendants challenged plaintiff's right to maintain this action while child support payments were in default. The record as to previous child support is pertinent to the question of the child's welfare but does not go to the jurisdiction of the court to determine the question.

■ "The action instituted by the plaintiff is a statutory proceeding of habeas corpus. This court has, as have courts generally, modified and enlarged the scope and original purpose of the writ as applied to the custody of minor children, and now considers and treats the proceeding as invoking the broad and highly equitable power of the court, to the end that the paramount and ultimate consideration of the court is the best interest and welfare of the minor children brought before it." (Citation) Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1085, 65 N.W.2d 366. See also Helton v. Crawley, 241 Iowa 296, 317, 41 N.W.2d 60.

■ Neither reward nor punishment of the claimants is a consideration relevant to the issues involved. Vanden Heuvel v. Vanden Heuvel, supra, 254 Iowa, loc. cit. 1399, 121 N.W.2d, loc. cit. 220.

IV. "In child custody cases the first and governing consideration of the courts must be the best interest of the child." This proposition is so well settled as to need no discussion or citation of authority. Rule 344(f)15, Rules of Civil Procedure, quoted with approval in Huston v. Huston, supra, 255 Iowa, loc. cit. 550. For a concise statement of the principles involved see also Vanden Heuvel v. Vanden Heuvel, supra.

■ V. We have uniformly held the statutes sections 668.1 and 668.2, now section 559, Iowa Probate Code, giving preference to parents in custody cases, do not provide for an absolute right in the parent but only a presumptive right which must give way where it has been relinquished or where the welfare and best

**532**

interest of the child call for other custody. In re Guardianship of Plucar, supra, 247 Iowa, loc. cit. 403.

■ VI. Plaintiff's latest marriage may have generated in him a new sense of responsibility never before apparent but we are not inclined to take an unnecessary chance on the welfare of this child and disrupt a situation that appears without question to be good. Plaintiff has been derelict in his parental responsibilities. His interest in his daughter has been minimal. His marital record has been repetitiously unstable.

We paraphrase and quote applicable statements from the Plucar case, supra, 247 Iowa, loc. cit. 402. We think the record "affords insufficient support for a finding that the child's best interests are furthered by awarding her custody to her father as against her grandparents." Such a decision is not in the interest of Gayle "whose welfare is of primary concern." "We feel it is fundamentally wrong to take this child from the home to which it has become so strongly attached and award her custody" to plaintiff in a distant state. Her father has been content to let someone else support and care for her. "The grandparents faithfully cared for her * * * and did an excellent job. There is no evidence to the contrary." Plaintiff "chose to take an extended holiday from the responsibilities of parenthood" and at this time "he has no just claim to his child's custody either in law or morals."

The case is reversed and remanded for the entry of a decree denying the prayer of plaintiff's petition and awarding custody of Gayle Lynn Carrere to the defendants Robert F. Prunty and Mary M. Prunty.—Reversed.

All JUSTICES concur.