**Suanne Marie LAMAR, by Her Next Friend and Aunt, Helen STENSLAND, Appellee,**

v.

**Clara ZIMMERMAN, Appellant.**

No. 53278.

Supreme Court of Iowa.

July 24, 1969.

Cahill, Lovelace & Poula, Iowa City, and Herrick, Langdon, Belin & Harris, Des Moines, for appellant.

Henry Wormley, Des Moines, for appellee.

LeGRAND, Justice.

This de novo habeas corpus appeal involving the custody of two-year-old Suanne Lamar presents the aftermath of a tragic automobile accident which resulted in the death of all other members of the little girl's family.

Except for a last minute change in plans she, too, would probably have died with both her parents and her four sisters and brothers. Instead she is now the subject of this litigation to determine who shall have her custody.

When Dr. John Lamar and his wife Patricia, together with four of their five children, started on their ill-fated trip, Suanne was left with her maternal grandmother, Clara Zimmerman, in Iowa City. The fatal accident occurred on June 21, 1968, and this action was brought on July 16, 1968, by Helen Stensland, a paternal aunt, who claims she is best qualified to have custody of the orphaned child.

The trial court awarded custody to Helen Stensland and the grandmother appeals. We affirm the trial court.

We seldom see appeals in which all parties are so blameless and estimable. No matter where the child is placed, she will have a fine home and the loving care of good people. It is apparent that, in a very real sense, the litigants are primarily interested in the welfare of the child. This, of course, is also our first consideration in child custody cases.

Our task, then, is to choose one of several good homes, all of which would afford substantially the same advantages and opportunities and be more than adequate for the girl's physical, moral and emotional well-being.

Under the record here there are four possible custodial choices presented:

Clara Zimmerman, maternal grandmother; Helen Stensland, paternal aunt; Ruby Cozine, maternal aunt; and H. W. Zimmerman, maternal uncle. We discuss them later.

■ Although habeas corpus was originally designed to test the legality under which a person was restrained of his liberty, it was long ago enlarged to include an inquiry into the proper custody of minor children. There is, of course, nothing "illegal" about Suanne's residence with her grandmother, but nevertheless the habeas corpus writ is the proper procedure by which to ask that a court determine her custody and make suitable order therefor.

In Allender v. Selders, 227 Iowa 1324, 1330, 291 N.W. 176, 179, we quoted with approval the following statement by Justice Cardozo in People ex rel. Riesner v. New York Nursery and Child's Hospital, 230 N.Y. 119, 129 N.E. 341, 343: "The writ of habeas corpus was limited in its origin to cases of restraint under color or claim of law * * *. In time, however, it was extended to controversies touching the custody of children, which were governed, not so much by consideration of strictly legal rights, as by those of expediency and equity, and, above all, the interests of the child."

This same philosophy has been reiterated by us from time to time. Helton v. Crawley, 241 Iowa 296, 309, 41 N.W.2d 60, 69; Ball v. Ball, 250 Iowa 763, 765, 96 N.W.2d 317, 319; Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 1398, 121 N.W.2d 216, 220.

■ The primary question in child custody cases, paramount even to the rights of parents, is the welfare of the child, to which all other considerations must yield. Rule 344(f), (15), Rules of Civil Procedure; 42 Am.Jur.2d, Infants, section 43, page 44; 39 C.J.S. Habeas Corpus § 41b, page 572; Wells v. Wells, Iowa, 168 N.W. 2d 54, 60; Carrere v. Prunty, 257 Iowa 525, 530, 133 N.W.2d 692, 696; Kouris v. Lunn, 257 Iowa 1267, 1271, 136 N.W.2d 502, 505. Custody of children should neither be awarded to one as a prize nor withheld from another as a punishment. Wells v. Wells, supra, and citations.

■ Although our early cases left the matter in some doubt, it is now well settled that a habeas corpus action involving the custody of minor children is an equitable proceeding and is reviewable de novo. 39 C.J.S. Habeas Corpus § 41, page 568; Carrere v. Prunty, supra; Halstead v. Halstead, 259 Iowa 526, 531, 144 N.W.2d 861, 864; Garvin v. Garvin, Iowa, 152 N.W.2d 206, 211; Stafford v. Taylor, Iowa, 158 N.W.2d 621, 623.

I. This appeal presents two issues, one procedural and one substantive. The procedural complaint is that the district court of Polk County should have granted a change of venue to provide for trial of this cause in Johnson County under section 663.4, Code of Iowa, 1966 which provides as follows:

"Application for the writ [of habeas corpus] must be made to the court or judge most convenient in point of distance to the applicant, and the more remote court or judge, if applied to therefor, may refuse the same unless a sufficient reason be stated in the petition for not making the application to the more convenient court or a judge thereof."

Application for change of venue based on this statute was denied. This is alleged as error.

■ Section 663.4 does not require refusal of the writ when application is made to a judge or a court other than the one "most convenient in point of distance to the applicant." It provides only that such judge or court may refuse to issue the writ unless the petition states a sufficient reason for not applying to the more convenient court. We have held several times the question thus raised is one of venue, not jurisdiction, and that a remote court is not obliged to deny the writ under all circumstances. Thompson v. Oglesby, 42 Iowa 598; Ware v. Sanders, 146 Iowa 233, 241, 124 N.W. 1081, 1084; Addis v. Applegate, 171 Iowa 150, 154 N.W. 168. See also discussion in State Institution for

Feeble-Minded at Woodward, Iowa v. Stillman, 236 Iowa 1023, 20 N.W.2d 417.

We do not understand the objection here made challenges the propriety of the discretion exercised by the trial court. Rather it is claimed we should now hold the court has no discretion and make the provisions of section 663.4 relating to the place where the writ may issue mandatory.

We do not consider whether the refusal to grant a change of venue here was a proper exercise of discretion and we base our holding on the broader question—and the only one raised—whether such discretion exists at all.

■ Under the plain language of the statute we hold the trial court has discretion to refuse an application for a change of venue. We are not persuaded we should overrule our earlier cases which so hold and at the same time repudiate the language in section 663.4 providing a court or judge *may* refuse to issue the writ by holding this means he *must* do so.

If any support for this conclusion is needed, it may be found in section 663.5, which makes the provisions of section 663.4 mandatory *when the applicant is an inmate of a state or federal institution.* The inescapable inference is that they are not mandatory in other cases; otherwise section 663.5 would have been entirely without purpose. We mention, too, that rarely is a permissive word in a statute, such as "may" in section 663.4, given mandatory effect. Green v. City of Mt. Pleasant, 256 Iowa 1184, 1219, 131 N.W.2d 5, 27, and citations.

We repeat here what was said in Ware v. Sanders, supra, at page 241 of 146 Iowa, at page 1084 of 124 N.W., "The statutory restriction [in section 4420, now 663.4] serves to put the judge on his guard, and suggest inquiry into the propriety of his entertaining the proceeding and the good faith of the applicant in coming to him, but we think it is not a jurisdictional question."

Under the objection urged, we find no error in the ruling of the trial court denying a change of venue.

II. The remaining issue goes to the heart of the matter: the best interests of the little girl. As already noted the record shows all persons to whom custody might be awarded would afford Suanne the best of care under the unfortunate circumstances which deprive her of the opportunity to be reared by her own parents.

Helen Stensland and her husband live on a farm near Huxley, Iowa. They have four children, the youngest of whom is an eight-year-old girl. They are financially able and willing to rear Suanne.

The Stensland home is more than adequate for the needs of the family, and it can easily accommodate to the addition of one more child.

There is convincing evidence that the Stenslands are of good character, are excellent parents, and are held in high esteem in their community. This is readily conceded by appellant and other members of appellant's family.

Clara Zimmerman testified, "She [Helen Stensland] has a nice home. She is a good mother." Mr. H. W. Zimmerman said, "I think Mr. and Mrs. Stensland are nice people. I think they would try to furinsh this little girl a good home."

Esther Zimmerman, wife of H. W. Zimmerman, described them this way. "I have visited in the home of Mr. and Mrs. Harold Stensland. They are nice people and have a nice family."

According to Ruby Cozine, "They [Mr. and Mrs. Harold Stensland] have a lovely family and they are nice people. I hope they feel that way about me. * * * I feel certain that Mrs. Stensland, if granted the custody of the child, would do a good job raising the child. I think the child would be in excellent hands."

William Cozine, husband of Ruby Cozine, said, "I know Mr. and Mrs. Stens-

land quite well. * * * They have a nice family. They are good people. I hold them in very high regard. * * *"

As the trial progressed it became apparent Clara Zimmerman was really proposing Mr. and Mrs. William Cozine as the ones to whom custody should be given. Mrs. Cozine is Clara Zimmerman's daughter and an older sister of Suanne's deceased mother. We say this because much of the evidence was designed to show the Cozines could furnish a home for their niece as suitable as that to be provided by the Stenslands. The record fully supports this claim. Again neighbors and friends rallied to the cause, and the evidence is conclusive that Mr. and Mrs. Cozine are good parents, are persons of exemplary character, and boast an excellent reputation in their community.

Although Clara Zimmerman did not renounce her own claim to custody, her vigorous espousal of Mr. and Mrs. Cozine is tacit recognition that the court would not seriously consider her because of her age. She is a widow, 71 years of age. She has brought her own children to maturity and may well be proud of all of them.

■ While the record shows her to be in good health, she is nonetheless at that state in life when we would be reluctant to permit her to take on anew the responsibility of caring for a small child. When Suanne reaches her majority, her grandmother will be almost 90 years old. This is a circumstance properly to be considered in determining custody. 2 Am.Jur.2d Adoption, section 62, page 911; 56 A.L.R.2d 823, 827.

Eliminating Clara Zimmerman—as we feel we must—the real choice lies between the Stenslands and the Cozines. In background, character, environment, and general qualifications they are strikingly alike.

■ Therefore we seek some factor to tip the scales one way or the other. The evidence shows both Dr. Lamar and his wife expressed the wish that Helen Stensland have the care of their children if "anything should happen to us." We have held such a desire expressed by a deceased parent, while not controlling, is entitled to consideration. Jensen v. Sorenson, 211 Iowa 354, 361, 233 N.W. 717, 721; Lancey v. Shelly, 232 Iowa 178, 186, 2 N.W.2d 781, 785; Joiner v. Knieriem, 243 Iowa 470, 482, 52 N.W.2d 21, 28; Finken v. Porter, 246 Iowa 1345, 1348, 72 N.W.2d 445, 446; In re Guardianship of Carrick, 250 Iowa 1181, 1187, 98 N.W.2d 315, 319.

This wish was announced to Dr. James Fraser, a professional associate of Dr. Lamar, and to Herman Schweiker, the attorney who prepared wills for both Dr. and Mrs. Lamar. These wills, which were introduced into evidence, also named Helen Stensland alternate executor and trustee, if Dr. Lamar's parents should be unable or unwilling to act.

This fact, while of no great significance by itself, when coupled with the parental wishes already mentioned, indicates it was Helen Stensland in whom they reposed trust and confidence and who would most probably be their choice under the circumstances now confronting us.

■ We have studied the record carefully and can find no grounds upon which to reach any conclusion except that announced by the trial court.

We find the best interests and welfare of Suanne Lamar will be served by awarding her custody to Helen Stensland and we accordingly affirm the trial court.

Affirmed.

All Justices concur.