In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Randal David Robert ANKENEY.

David Ankeney, Guardian and Conservator, Appellant.

No. 83–1071.

Supreme Court of Iowa.

Jan. 16, 1985.

R. Eugene Knopf of Diehl, Clayton, Cleverley, Knopf & Williams, Newton, for appellant.

Charles G. Neighbor of Walker & Neighbor, Newton, for appellee.

SCHULTZ, Justice.

The controlling issue in this appeal is whether the district court, sitting in probate, may direct the guardian to provide the child access to a grandparent. The district court directed the guardian to provide the child visitation with the grandmother after finding that the best interest of the child would be served by such visita-

tion. We hold the probate court has authority to direct the guardian's action and, under the limited facts of this case, properly exercised such authority. We affirm.

The minor ward, Randal Ankeney, was born in 1971. A Nebraska court dissolved the marriage of his parents, David and Carolyn Ankeney, and awarded Randal's custody to Carolyn. Carolyn and Randal moved to Baxter, Iowa, near the residence of Carolyn's mother, Lillian McWhirter. Randal lived in Baxter for approximately two years until Carolyn died on July 4, 1980, as a result of an automobile accident. David, who had remarried and had become a resident of Colorado, applied to the Jasper County Court to become Randal's guardian and conservator and was appointed to serve in those capacities on July 8, 1980. At that time Randal moved to Colorado with his father and stepmother, Mary Lou.

Randal has a close relationship with his maternal grandmother, Lillian, and his mother's family. Lillian, a widow, has two sons, five daughters, and several grandchildren. Randal maintained a close relationship with his family, including his two maternal great-grandmothers. After Randal moved to Colorado, David maintained a cooperative relationship with the McWhirters, allowing Randal to visit on a regular basis on special occasions, like Christmas, and during the summer for two or three weeks. The grandmother paid his airfare for these trips. During these periods there were extensive family visitations, and Randal was given the opportunity to visit with his former schoolmates from Baxter. David terminated these visitations when Randal's maternal uncle challenged David's actions as conservator.

As conservator, David received in excess of $74,000 in insurance money. There is an indication that more funds may be forthcoming for Randal from a wrongful death action in Iowa on behalf of his mother's estate and an inheritance from his maternal grandfather's estate. In October of 1982, David filed a conservator's report which alerted the McWhirters that Randal's insurance proceeds had been spent to purchase a new home for the Ankeney family. Although title was originally conveyed to David and Mary Lou Ankeney, they later conveyed a ".649%" interest in the home to Randal by warranty deed. David, as conservator, had not sought the court's permission to make such an investment. Randal's uncle, Robert McWhirter, filed a petition to remove David as conservator, alleging an unauthorized use of the insurance proceeds. It appears that the visitation problems were an outgrowth of this action by Randal's uncle. The petition for removal of the conservator was amended to add a request for visitation by the maternal grandmother, Lillian.

A hearing was set on the matter of visitation; although David did not appear in person, he was represented by his attorney. After hearing the testimony of several members of the McWhirter family on the issue of visitation, the court concluded that it had jurisdiction of the matter by virtue of the guardianship and "that it is in the best interest of the child that the previous visitation be continued." The court ordered that the guardian provide visitation between the ward and his grandmother, Lillian, and required that the guardian file a proposed visitation schedule within a time period. When that proposed visitation schedule was not filed, the court held a further hearing. At that hearing the guardian, through his attorney, declined to provide a visitation schedule; and the attorney made a professional statement that the stepmother, Mary Lou, had adopted Randal in a Colorado proceeding. The court then specified the visitation and ordered that the grandmother be responsible for all costs of transportation. This appeal followed.

■ I. We first address a procedural issue raised by the appellee. The order granting visitation was filed on August 1, 1983. On August 8, an order was entered to set up a schedule for the visitation which had been ordered earlier; this order is the one to which the notice of appeal was addressed. The notice of appeal stated that the appellant "hereby appeals to the Su-

preme Court of Iowa from the order entered in this matter on the 8th day of August, 1983, and from each and every order and ruling inhering therein."

The appellee grandmother argues that, since the order actually granting visitation was one other than that to which the notice of appeal was addressed, the notice of appeal was fatally defective. She does not claim she was misled or prejudiced by the notice of appeal.

We believe the August 1 order "inhered" in the order of August 8 and was included by a literal reading of the notice of appeal. Moreover, we have held that substantial compliance with the form requirements of Iowa Rule of Appellate Procedure 6 is sufficient. *In re Marriage of Schissel*, 292 N.W.2d 421, 423 (Iowa 1980); *Blink v. McNabb*, 287 N.W.2d 596, 598–99 (Iowa 1980); *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 199 N.W.2d 373, 378 (Iowa 1972). The notice substantially complied with the rule and was sufficient to confer jurisdiction in this court.

II. David challenges the authority of the district court, sitting in probate, to enter these orders in two respects. First, he claims there is no statutory or inherent authority to order visitation between the ward and the maternal grandmother. Secondly, he claims any such authority was terminated when Randal was adopted by his stepmother. Under the limited facts of this appeal, we cannot agree with these assertions.

In the written briefs and oral arguments, both parties have supplied us with material and facts that have arisen subsequent to the orders appealed from. These matters concern the hearing to remove the conservator, subsequent contempt proceedings and the agreement for visitation pending the appeal. We shall only consider those matters in the record at the time the appeal was taken, however.

■ A. David points out that the district court cited Iowa Code section 598.35(3) in its ruling and urges that this subsection does not authorize a petition for visitation in the probate court. This subsection allows a grandparent to petition for visitation rights with a grandchild when "[t]he parent of the child, who is the child of the grandparents, has died." § 598.35(3). We agree that this subsection is not controlling. The real issue is not a question of a grandparent's right to visitation; rather, this case concerns the authority of the district court sitting in probate to enter orders directing the guardian's actions in matters involving the best interest of the ward.

■ Initially, when the guardian secured his appointment and qualified, he submitted himself to the jurisdiction of the court making the appointment and agreed to be subject to the orders entered by the court. Iowa Code § 633.71 (1983). The court having jurisdiction of a guardianship is the superior guardian, and the guardian is an officer of the court. 39 Am.Jur.2d *Guardian and Ward* § 1 (1968). Thus, one who procures and accepts an appointment as guardian is subject to the control and supervision of the court. 39 C.J.S. *Guardian and Ward* § 7 (1976). Such a guardian is estopped from denying the jurisdiction of the appointing court. 39 Am. Jur.2d *Guardian and Ward* § 24 (1968).

■ Our statutory scheme and case authority grant a preference to parents who seek to act as guardian and custodian, subject, however, to the overriding concern of the best interest of the child. The guardian shall have custody of a minor ward. Iowa Code § 633.635 (1983); *In re Guardianship of Carrick*, 250 Iowa 1181, 1186, 98 N.W.2d 315, 318 (1959). "The parents of a minor ... if qualified and suitable, shall be preferred over all others for appointment as guardian." Iowa Code § 633.559 (1983). This rebuttable preference accorded the natural parents gives way to the welfare and best interests of the child, however; and we have refused custody to the natural parent. *Patten v. Patrick*, 276 N.W.2d 390, 397 (Iowa 1979) (when grandmother appointed guardian of child on mother's petition, we denied father's petition to remove guardian and place custody with him on the basis that the best interest of the

child overcame the preference granted the natural parent); *Carrere v. Prunty,* 257 Iowa 525, 531–32, 133 N.W.2d 692, 696 (1965) (when mother originally had custody of child by divorce decree, we denied natural father custody of the child in an action against maternal grandmother who was appointed the child's guardian after the death of the mother); *Finken v. Porter,* 246 Iowa 1345, 1348, 72 N.W.2d 445, 446 (1955) (father, who lost custody of child to mother in divorce proceeding, unsuccessful in proceeding to remove stepfather as guardian of child and regain custody of child from maternal grandparents, following death of mother).

█ The power of the probate court is not limited to custody decisions. In a contested proceeding concerning guardianship of a minor, we have established the child's grandmother as guardian and custodian and granted visitation rights to a natural parent. *Patten,* 276 N.W.2d at 398. The one undisputed principle is that the best interest of the child is the supreme consideration. Iowa R.App.P. 14(f)(15). Recently, we addressed the rights of grandparents in *Olds v. Olds,* 356 N.W.2d 571, 572 (Iowa 1984), and held that grandparents do not possess a common law right of visitation with grandchildren. The authority of the probate court to grant access of the ward to a grandparent arises from the child's best interest rather than from a statutory or common law right possessed by the grandparent.

█ We recognize that the guardian is responsible for the day-to-day decisions that are made for the child's welfare. The courts normally will not interfere with such decisions except when the evidence clearly shows that the best interest of the child dictates such interference. When the guardian has sought the aid of the court to be declared the guardian and custodian of a child, the guardian's custody and control of the ward is subject to the regulation and control of the court. 39 Am.Jur.2d *Guardian and Ward* § 65 (1968). Such regulation and control includes the matter of visitation. *Patten,* 276 N.W.2d at 398–99.

The guardian's rights with respect to custody and control of the person of the infant extend to refusing to permit other persons to have access to the ward, but this power also is subject to the control of the court which may require the guardian to permit certain persons to have such access.

39 C.J.S. *Guardian and Ward* § 59 (1976). If the best interest of the child dictates visitation, we hold that there is no logical reason to prevent visitation merely because the party seeking visitation is not entitled to it of right.

B. David's second challenge to the probate court's authority is that, even if the court had authority to order visitation, the adoption of the child by the stepmother severed the court's authority. The evidence of adoption was presented to the probate court after the contested hearing and the court's decision that the best interest of the child required contact with the grandparent. Assuming that the evidence was properly before the court, this evidence is of no aid to David under the facts of this case.

█ The rights acquired by the stepmother through adoption do not terminate summarily the jurisdiction of the probate court or the guardianship. The grounds for termination of a guardianship are provided in Iowa Code § 633.675 and include the minor's attainment of majority, the minor's death and a "determination by the court that the conservatorship or guardianship is no longer necessary for any other reason." Randal is alive and is still a minor, and the court has not determined that the guardianship is no longer necessary.

█ David further asserts that *In re Adoption of Gardiner,* 287 N.W.2d 555 (Iowa 1980), indicates that an adoption terminates a grandparent's visitation rights. *Gardiner* merely holds that the adoption of a child cuts off the grandparent visitation rights created in chapter 598. 287 N.W.2d at 558. There was no guardianship in *Gardiner.* Assuming, without deciding, that the stepmother's adoption in Colorado

was valid, it does not terminate the guardianship proceedings in Iowa or the authority of the court to insure that the child's best interests are served.

Our review of these matters is de novo. *Patten*, 276 N.W.2d at 397. When we consider the facts, we find ample support for the decision of the trial court. The child has maintained a close relationship with his maternal grandmother and his maternal family. Although no separate counsel or guardian ad litem has been appointed for the child, he has indicated by telephone and in writing his desire to continue visiting his mother's family. The father obtained the guardianship and custody of the child only after the unfortunate death of the mother. He was also appointed conservator of funds the child received as a result of the mother's death. For several years the father allowed visitation with the grandmother at her expense. It was only when the child's maternal uncle alerted the court that the father, acting as conservator of the child, had improperly used conservatorship funds of over $74,000 to purchase a home in Colorado initially titled in the father and stepmother, that the father terminated visitation. The father admitted that the visitations were terminated due to problems which resulted when the uncle sought an accounting of the conservatorship funds. It would be ironic to sanction the father's punitive action terminating visitation in this situation when the uncle merely was protecting the minor's sizable inheritance. The grandmother and aunt have indicated that the problems the adults have experienced should not be discussed with Randal. The child has a close relationship with his maternal relatives which should be allowed to continue.

The trial court found it was in the best interest of the child that the previous visitation be continued and the child be permitted to have visitations with the grandmother in Iowa. Following a de novo review, we make the same finding.

AFFIRMED.

All Justices concur except LARSON, HARRIS, McGIVERIN, JJ., who dissent.

LARSON, Justice (dissenting).

The majority, I believe, erroneously applies a legal standard which conflicts with our grandparent visitation statute, Iowa Code section 598.35, and with two recent cases which hold that that section is the exclusive source of authority for grandparent visitation and that an intervening adoption terminates such rights. Even more significantly, it overrides the custodial parent's objections and orders visitation in the face of the clear weight of the evidence, which was that the child's best interests required that visitation not be ordered. Its legal theory will have an impact far beyond the "limited facts of this case," as the majority asserts; it is in fact a blueprint for future evasion of our grandparent visitation statute, and the effect of an intervening adoption, by simply establishing a guardianship, Iowa Code § 633.552 ("any person" may petition for guardianship), and then, as here, demanding visitation rights.

The majority observes that "[t]he authority of the probate court to grant access of the award to grandparents arises from a child's best interest *rather than from a statutory* or common-law right possessed by the grandparent." (Emphasis added.) Yet this court said very recently in *Olds v. Olds*, 356 N.W.2d 571, 573 (Iowa 1984), that the *only* basis for ordering grandparent visitation is a statute, specifically Iowa Code section 598.35. The probate court in this case recognized that fact and based its ruling solely on section 598.35.

In thus disavowing application of any "statutory or common-law right" the majority suggests that the power of a probate court in a guardianship somehow transcends the statutory authority of 598.35 available to the district court generally. The probate court, however, is simply given jurisdiction of the administration of guardianship proceedings in Iowa Code § 633.-10(3) (1983); I do not believe it is given the power to grant rights not provided it by statute or common law simply because it is

acting in a guardianship. The majority points to the child's "best interests" and on that basis alone asserts authority to order visitation without regard to the lack of express, or implied, statutory authority to do so.

Our grandparent visitation statute allows a court to act in a child's best interest. It provides, in part:

A petition for grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interest of the child.

Iowa Code section 598.35. Under this section, however, it is not enough to show that visitation is in the best interest of the child; the petitioner must also meet at least one of the other criteria, which in effect establishes standing, such as an assertion that "[t]he parent of the child, who is the child of the grandparents, has died." Iowa Code section 598.35(3). Thus both criteria, standing and the child's best interests, must be established. We cannot assume, as the majority apparently has, that the legislature intended to grant an inherent but unexpressed authority for a probate court to order grandparent visitation on a showing of only one of the criteria when a specific statute on the subject, section 598.-35, requires at least two.

I think a probate court clearly has the authority to order grandparent visitation, but under section 598.35, not under the majority's single-criterion test. (We have held that our grandparent visitation statute, section 598.35, while found in the dissolution of marriage chapter, is not limited in application to dissolution cases. *See In the Matter of the Adoption of Gardiner*, 287 N.W.2d at 555, 557 (Iowa 1980).)

There is nothing in our Probate Code, chapter 633, which even suggests that a probate judge has any authority beyond section 598.35 to order such visitation. Why the majority chose to fashion its own basis for ordering grandparent visitation when there is already an express statutory authority to do so, remains a mystery to me, unless it is to provide a means of distinguishing *Gardiner*, which held an

adoption cuts off grandparent visitation under section 598.35. This leads me to another point on the law of this case.

II. This child had been adopted by his father's present wife before the petition for visitation was filed. Our holding in *Gardiner*, that an adoption terminates the right of grandparent visitation, is not confronted directly by the majority. It merely says *Gardiner* was not a guardianship case therefore it is inapposite. I believe this is a spurious argument because, for the reasons previously discussed, there should be no distinction between the power of the court sitting at probate and one sitting in another division of the district court. In any event, all the policy arguments supporting *Gardiner's* holding, primarily the need for a child's new start, are equally compelling, regardless of which division the district court is ruling on it.

III. Regardless of which test is applied, the best interests must be established before grandparent visitation may be ordered. Our review is de novo. *See* Iowa Code section 633.33 (probate matters, with certain exceptions not applicable here, are to be tried in equity).

The majority, which places great reliance on the best interests test, points to no evidence as to how those interests are advanced by forced visitation. I submit, in fact, the only evidence on the issue mandates a different result.

The grandmother and her daughter (an aunt to this child) testified as to how well Randy and their own family members got along and how much his visits meant to the family. This is certainly understandable. Noticeably lacking in the record, however, is any evidence that it would be in Randy's best interests to order visitation. There is no psychological or other expert testimony to that effect. In fact, *no* one, not even the family members, testified it would be in Randy's best interests. The words "best interests" or any equivalent, in fact, do not appear once in the petitioner's evidence.

On the other hand, there is evidence that it would *not* be in his best interests. The

father's affidavit, which was received in evidence without objection, stated:

> David [the father] wishes to petition the court to examine the facts as to why Randal should not be ordered to return to Iowa without his parent's permission.

Randal lives with his natural father, David K. Ankeney, and his mother by adoption, Mary Lou Ankeney. The court order for Randal's adoption gives his mother, Mary Lou Ankeney all the rights and provisions, along with the responsibilities of the natural parent. The family unit in which Randal lives is an extremely close family. Randal is very close to his mother, and to his brother and sister, besides the loving, close relationship he has with his father. In this family setting, there is an exceptionally high degree of love and caring for Randal, along with the necessary guidelines of supervision, which is sadly neglected in much of today's society. I want to emphasize how important and precious Randal's well-being is to his father, David, and to his mother, Mary Lou.

The situation between the McWhirter family, and the Ankeney family, has deteriorated to absolute mistrust. The McWhirters have neglected time and time again any sensible lines of open communication about Randal, with David. This has caused David K. Ankeney to experience much doubt and suspicion about the McWhirter's true intentions toward Randal.

*Furthermore, on Randal's previous visits with the McWhirter family, David has been extremely concerned about the lack of supervision given, and the participation in activities not suited for a child of Randal's age.*

(Emphasis added.)[1]

Ordinarily, it would be in the best interests of a child to maintain family ties such as these. We do not have an ordinary situation here, though. What we have is a highly charged confrontation, both in and out of court, and the child is in the middle of it. While the grandmother and aunt testified these hostilities were strictly between the adults and agreed to keep Randy out of it, they admitted they had already brought him into it by discussing it with him.

Randy's father strenuously objected to the visitation order. While section 598.35 recognizes limited restrictions on a parent's right to veto grandparent visitation, this court has recognized a strong policy basis for such veto rights:

> Courts that give a custodial parent veto power over grandparent visitation do so on the basis that judicial enforcement of visitation would divide and thereby hamper proper parental authority, force the child into the midst of a conflict of authority and ill feelings between parent and grandparent, and coerce what should remain a moral rather than legal obligation.

*Olds*, 356 N.W.2d at 573.

The child's father literally begged to be given the rights of a parent in such matters. In the affidavit previously referred to he said:

> David K. Ankeney beseeches the court to consider the absolute rights and responsibilities the parents have to care for and to raise up a child in the ways which are right. Only the parents know the feelings, the attitudes, the situations in which their precious child, whom they dearly love, should be exposed. With the absolute lack of trust between the McWhirter family, and the Ankeney family, David K. Ankeney begs the court to not take away the parents' rights for Randal's well-being by forcing Randal into a visitation which would not be in Randal's best interests.

There is without question a moral obligation to provide visitation to this grandmother. The loss of her daughter, this child's

---

1. While the affidavit referred to is filed after the order appealed from was filed, the appellee grandmother raised the issue of the effect of subsequent contempt proceedings and filed an amendment to the appendix dealing with that issue. The father's affidavit was filed in connection with those proceedings, which are involved in this appeal.

mother, makes that moral obligation even more compelling, it seems to me. Because of the proponent's failure to establish that the best interests of the child would be served by forced visitation, and even more clearly by the intervening adoption, however, that moral obligation has not been transformed into a legal one.

I would reverse and remand for an order striking the provisions for forced grandparental visitation.

HARRIS and McGIVERIN, JJ., join this dissent.